1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re: | CHAPTER 11 |
|---|---|
| POTENTIAL DYNAMIX, LLC, | Case No. 2:11-bk-28944-DPC |
| Debtor. | **ORDER APPROVING APPLICATION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS OF MORRISANDERSON & ASSOCIATES LTD.** |

The Court having received the Application for Rule 2004 Examination and Production of Documents of MorrisAnderson & Associates Ltd. [DE 633] (the "Application") filed by Cody Jess and Scott Goldberg (jointly, the "Applicants"), and good appearing,

IT IS HEREBY ORDERED that the Application is approved.

IT IS FURTHER ORDERED that the Applicants are authorized to issue a subpoena authorizing a combined Rule 30(b)(6) deposition of MorrisAnderson & Associates Ltd. (the "Litigation Trustee") and Dan Dooley, individually, to appear for a single examination on a date and time agreeable to the parties or, if upon notice, after not less than 21 days' notice at Moyes Sellers & Hendricks, located at 1850 North Central Avenue, Suite 1100, Phoenix, Arizona 85004, for an oral examination, which will be recorded by stenographic means and will be taken before an officer authorized by the laws of the United States to administer

oaths and to take testimony.

IT IS FURTHER ORDERED that the Applicants are authorized to issue a subpoena requesting that the Litigation Trustee produce for inspection and copying the documents, including electronically stored information that is listed on the attached **Exhibit A** by delivering originals or copies of the documents to the undersigned counsel via either email in a searchable .pdf format directed to khendricks@law-msh.com, or by hand or mail delivery to the attention of Keith L. Hendricks, Esq., Moyes Sellers & Hendricks, Ltd., 1850 North Central Avenue, Suite 1100, Phoenix, Arizona 85004., on a date and time agreeable to the parties or, of upon notice, after not less than 21 days' notice.

IT IS FURTHER ORDERED that the Litigation Trustee's and/or Mr. Dooley's involvement is limited to a single deposition.

IT IS FURTHER ORDERED the Applicants are directed to serve a copy of this Order upon the Litigation Trustee and Mr. Dooley by making service upon Robert J. Miller, Esq.

DATED AND SIGNED ABOVE.

00298251 2

## EXHIBIT A

1.      The term "**Agreement**" means the Agreement of Counsel entered into in January 2020 between G&K, and SWAZLAW P.L.C., a copy of which is attached hereto as **Exhibit 1**.

2.      The term "**Communications**" means and includes all oral and written communications of any nature, type, or kind including, but not limited to, any documents, conversations (telephonic or otherwise), discussions, meetings, facsimiles, emails, pagers, memoranda, and any other medium through which information is conveyed or transmitted.

3.      The term "**Document**" means documents and other tangible things as defined in the broadest sense permissible under the Federal Rules of Civil Procedure and shall include, without limitation:  the original, or, if an original is not available, any copies, as well as any non-identical copies (regardless of origin and whether or not including additional writing thereon or attached thereto) and whether or not still in existence and drafts of any (a) memorandum, (b) reports, (c) evaluations, (d) correspondence, (e) interoffice communications, (f) books, (g) manuals, (h) instructions, (i) directives, (j) notes, (k) forms, (l) letters, (m) agreements, (n) contracts, (o) invoices or purchase orders, (p) checks, (q) journals, (r) ledgers, (s) financial statements, (t) pro formas, (u) telexes, (v) rapid faxes, (w) radiograms, (x) confirmations, (y) telegrams, and telexes, (z) pamphlets, (aa) drawings, (bb) contracts or agreements, (cc) lawsuits, including complaints oppositions, replies, and all other pleadings or memoranda submitted to or for submission to any court, administrative agency, association, or governmental tribunal, whether in or outside the United States, (dd) periodicals, (ee) newspapers, (ff) press or publicity releases, (gg) computer or business machine printouts, (hh) accountants' work papers, accountants' statements and writings, (ii) notations or any record of meetings, (jj) brochures, (kk) catalogs, (ll) photographs, (mm) circulars, (nn) charts, (oo) maps, (pp) sketches, (qq) statements, (rr) notations of any sort concerning conversations, telephone calls, meetings or other communications, (ss) bulletins, (tt) lists, (uu) minutes, (vv) audio or video tapes and computer discs, (ww) electronic or magnetic transcriptions including data stored in or for use in computers, word processors and memory typewriters, (xx) graphic or pictorial matter, (yy) applications and amendments, (zz) newsletters, (aaa) training materials, (bbb) promotional materials, (ccc) advertisements, (ddd) transcripts, (eee) diaries, (fff) analyses, (ggg) summaries, (hhh) enclosures, (iii) questionnaires and surveys, (jjj) complaints whether in the form of letters, notes of telephone calls, on forms, on tape recordings, on video recordings, or on any record whatsoever, (kkk) all drafts, preliminary versions, alterations, modifications, revisions, changes, amendments, and written comments concerning any of the foregoing, (lll) phone logs, (mmm) phone bills, (nnn) phone message logs, and (ooo) all other documentary materials of any nature whatsoever within the possession, custody, or control of the parties.

4.     The term "**Electronically Stored Information**" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by you, including but not limited to, mainframe, desktop, laptop, tablet, or palm pilot, network servers, telephone voicemail servers, employees' employer provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers or other information storing electronic devices of you, or on associated external media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, PowerPoint, Excel, Visio, or Access, WordPerfect, Oracle, or any other Microsoft, Adobe, or currently available "off-the-shelf" application must be produced in the form on which it is currently stored on whatever media it currently resides. The electronically stored information should not be locked, resaved, restructured, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in your systems. Unless otherwise specified, electronic mail (email) should be produced in native form; that is, in whatever database or file or directory structures are used by your mail processing software. All metadata and other unapparent or hidden data related to mail messages must be produced, including, but not limited to file attachments, message priority flags, message read/access timestamps, and in the case of email sent to distribution lists information on the membership of such lists at the time the email was sent.

5.     The term "**G&K**" means Gallagher & Kennedy, P.A. and all other persons acting or purporting to act on its behalf.

6.     The term "**Information**" means Communications, Documents, and Electronically Stored Information.

7.     The term "**Order**" means the Order Regarding Motion to Amend Receivership Order entered on September 13, 2021 in Maricopa County Superior Court, Case No. CV2020-001402 (consolidated with CV2020-001871), a copy of which is attached as **Exhibit 2**.

8.     The term "**Receiver**" means David Reaves who was as been appointed as receiver for SW, and his counsel.

9.     The term "**Related to**" means constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to or associated with the specified subject, including documents concerning the preparation of other documents.

00298251 2

10. The term "**Shaffer**" means Timothy Shaffer, the Chapter 11 Trustee in the bankruptcy case of Potential Dynamix, LLC, Case No. 11-bk-28944-DPC, and Plaintiff in Adversary Proceeding No. 2:13-ap-00799, and his attorneys and agents.

11. The terms "**SW**" means Schian Walker, PLC (also allegedly known as SWAZLAW, PLC).

12. The term "**you**" or "**your**" jointly means Dan Dooley and MorrisAnderson & Associates, Ltd. and all other persons acting or purporting to act on their behalf.

## **INSTRUCTIONS**

1. If you assert a privilege as to any Document that you have been requested to produce, in your response to this request, please identify each such Document and state the nature of the privilege claimed and the facts upon which such claim is based.

2. You are to produce all information that is your custody, control, or possession or your attorneys, investigators, agents, employees, subsidiaries, or other representatives.

3. Where an individual request calls for a response that involves more than one part, each part of the response should be clearly set out so that it is understandable.

4. Each of these requests is intended to be a continuing request, and if, at a later date, you obtain any additional Documents that are different from, or in addition to, those that you have produced, then you should amend your answer promptly so as to fully set forth the new or different information.

5. If your response to a request is "not applicable" or any similar phrase or answer, then explain in detail why the request is not applicable.

6. If your response to a request is that you do not have any such Documents in your possession, or any similar answer, then explain in detail all efforts you made to obtain or locate Documents responsive to that request.

7. You are requested to produce the Documents for inspection as they are kept in the usual course of business or to otherwise organize and label them to correspond with the categories in the request.

8. If you contend that a Document would be excludable from production regardless of its relevance, then (a) describe the subject matter of the Document; (b) identify

00298251 2

its date of preparation, (c) identify its author, (d) identify all recipients of the Document, (e) state all the reasons why the Document should be excluded from production, and (f) identify each person that has knowledge of the factual basis, if any, on which the privilege or other ground is asserted for not producing the Document.

9.  If any of the requested Documents cannot be produced in full, then produce them to the fullest extent possible, and (a) state your reasons for your inability to produce the remainder of the Document, and (b) describe in detail whatever information, knowledge, or belief that you have concerning the substance or the contents of the unproduced partial or incomplete Document.

10.  If you are requested to identify any Document that was at one time in existence but is no longer in existence, then please state, and specify for each Document: (a) the type of Document; (b) the content of the information contained therein; (c) the date upon which the Document ceased to exist; (d) the circumstances under which it ceased to exist; (e) the identity of all persons having knowledge of the circumstances under which the Document ceased to exist; and (f) the identity of all persons having knowledge or who had knowledge of the contents thereof.

## SPECIAL INSTRUCTIONS REGARDING ELECTRONIC DATA

1.  This request includes all electronically stored information generated, stored or accessible by your computer system(s). Electronically stored information is an irreplaceable source of evidence in this matter. In addition to discovery of all tangible forms of evidence, Cody Jess and Scott Goldberg request production of or access to your computer system(s), including access to the system, for nondestructive retrieval of relevant electronically stored information. You should have already implemented and maintain the following safeguards against the destruction of evidence pending resolution of this matter since the time you had notice of the pending claim.

2.  In the event you have not already taken appropriate steps to safeguard your electronically stored information, you must take the following steps for all computers used by you or anyone working at your direction:

a.  For fixed drives attached to such computers or accessible by such computers through a network or otherwise, (i) a true and correct copy should be made of all electronic data on such fixed drives that is responsive to any of the requests enumerated below including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listings (including hidden files) for all directories and subdirectories (including hidden files) on such fixed drives should be written; and (iii) such copies and listings should be preserved.

00298251 2

1

2          b.     Storage devices, such as magnetic tapes and cartridges, magneto-
optical disks, floppy diskettes, CDs, flash ROM, and all other such media containing any
3    electronic data that is responsive to any of the requests enumerated below, should be
collected and put into storage for the duration of this lawsuit.
4

5          3.     Regarding electronically stored information that is responsive to any of the
Requests enumerated below, which exist on fixed drives attached to computers at the time
6    this discovery request is served:  do not alter or erase such electronically stored information,
and do not perform other procedures (such as data compression and disk de-fragmentation
7    or optimization routines) which may affect such information, unless a true and correct copy
has been made of such active files and of completely restored versions of such deleted
8    electronic files and file fragments, copies have been made of all directory listings,
(including hidden files) for all directories and subdirectories containing such files, and
9    arrangements have been made to preserve copies while this matter is pending.
10

11         4.     Regarding all electronic media used for off-line storage containing any
electronically stored information, which exists at the time of this discovery request and is
12   responsive to any of the requests enumerated below:  stop any activity which may result in
13   the loss of such electronic information, including rotation, destruction, overwriting or
erasure of such media in whole or in part.  This special instruction is intended to cover all
14   removable electronic media used for data storage in connection with your computer system,
including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes, CDs, flash
15   ROM, and all other such media.
16

17         5.     Regarding storage devices maintained by third parties but accessible by you
through a network or otherwise:   do not modify or delete any electronically stored
18   information existing at the time these discovery requests are served that are or may be
responsive to any of the requests enumerated below, unless a true and correct copy of each
19   such electronic information has been made and steps have been taken to assure that such a
copy will be preserved and accessible for purposed of this lawsuit.
20

21         6.     Do not dispose of any electronic data storage devices or other equipment that
may contain or access electronically stored information falling within the scope of the
22   following requests.
23

24         7.     Preserve copies of all application programs and utilities, which may be used
to process electronically stored information falling within the scope of the following
25   requests.
26         8.     Maintain an activity log to document modifications made to any electronic

00298251 2

data processing system that may affect the system's capability to process any electronically stored information that is responsive to any of the requests enumerated below, regardless of who made such modification.

## DOCUMENTS TO BE PRODUCED

1.      All Information between you and G&K related to the Agreement and the Order, including, without limitation, any drafts or proposed pleadings related to the Agreement that were shared with third parties, such as the Receiver.

2.      All Information between you and Shaffer related to the Agreement and the Order.

3.      All Information related the Agreement, the Order and any payment of any kind from you to G&K on account of the Agreement or for work done in connection with Potential Dynamix, LLC, Case No. 11-bk-28944-DPC, and/or Adversary Proceeding No. 2:13-ap-00799.

## TOPICS FOR A RULE (30)(B)(6) DEPOSITION

1.      All discussion or communication of any kind between you and G&K related to the Agreement and the Order, including, without limitation, any drafts or proposed pleadings related to the Agreement that were shared with third parties, such as the Receiver.

2.      All discussions or communication between you and Shaffer related to the Agreement and the Order.

3.      All discussions or communication related the Agreement, the Order and any payment of any kind from you to G&K on account of the Agreement or for work done in connection with Potential Dynamix, LLC, Case No. 11-bk-28944-DPC, and/or Adversary Proceeding No. 2:13-ap-00799.

4.      Your position on whether you can, should or are obligated to pay or transfer to G&K any money on account of the Agreement or for work done in connection with Potential Dynamix, LLC, Case No. 11-bk-28944-DPC, and/or Adversary Proceeding No. 2:13-ap-00799.

00298251 2

# EXHIBIT 1

## Agreement of Counsel

SWAZLAW, P.L.C. fka Schian Walker, P.L.C. ("**SW**"), through its attorneys and staff, agreed to pursue two cases on a contingent fee basis.

Under a Contract for Legal Services dated December 18, 2013, (the "**Swift Contract**"), SW agreed to pursue claims, including those asserted in Adversary Proceeding No. 2:14-ap-00534 (the "**Swift Adversary**").

Under a Contract for Legal Services dated June 17, 2019, SW agreed to pursue claims against Amazon Services, LLC in Adversary Proceeding 2:13-ap-00799 (the "**Amazon Adversary**") on a contingent fee basis as set forth in the Application to Employ Schian Walker, P.L.C. on a Contingent Fee Basis [DE 566] (the "**Application**").

Under an engagement letter dated January 9, 2018, SW agreed to engage Morones Analytics to provide forensic accounting and damage analysis in the Amazon Adversary (the "**Morones Engagement**").

The Swift Contract, the Application and the Morones Engagement are collectively defined as the "**Agreements**".

SW requires the participation of Gallagher & Kennedy, P.A. ("**G&K**") to fulfill its obligations under the Agreements.

G&K is willing to perform the obligations of SW under the Agreements on the following terms and conditions:

Swift Adversary:  From the amounts otherwise payable to SW under the Agreements, G&K will be reimbursed its costs and paid its fees under its normal hourly rates.

Amazon Adversary:  From the amounts otherwise payable to SW under the Agreements, G&K will be reimbursed its costs and paid its fees under its normal hourly rates for the Amazon Adversary, and at such time as the total recovery to SW from the Amazon Adversary reaches $1,000,000, G&K shall have a right to a bonus in the Amazon Adversary equal to another fifty percent (50%) of its hourly charges. All amounts paid to SW either as fees or costs, including any costs of SW advanced by G&K, will be included in calculating the recovery by SW from the Amazon Adversary.

**Morones Engagement:**    The Morones Engagement with SW terminated on August 31, 2019. As of August 31, 2019, SW was obligated under the Morones Engagement to pay the sum of $87,129. G&K advanced $87,129 to SW to permit it to satisfy its obligations under the Morones Engagement, repayment of which is a general obligation of SW and is payable from the first proceeds received by SW under the Agreements.

Nothing in this agreement will affect the amounts owed under the Agreements or prejudice the rights of any party to object to the amounts owed pursuant to the Agreements.

After payment of the amounts owed to G&K as set forth above, all additional fees and costs due to SW under the Agreements will be paid to SW.

DATE: _____

_____
Dale C. Schian for
SWAZLAW, P.L.C.

DATE: _1/16/2020_

_____
Michael K. Kennedy for
Gallagher & Kennedy, P.A.

7622543v10/29604-0001

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
K. Cabral, Deputy
9/13/2021 8:00:00 AM
Filing ID 13357542

# GUTTILLA MURPHY ANDERSON, P.C.

**Ryan W. Anderson** (Ariz. No. 020974)
5415 E. High St., Suite 200
Phoenix, Arizona 85054
Email: randerson@gamlaw.com
Phone: (480) 304-8300
Fax: (480) 304-8301

Attorneys for the Receiver

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

SWAZLAW, PLC,

              Plaintiff,

v.

CODY JESS, et al.,

              Defendants.

_____

CODY JAMES JESS, et al.,

              Third-Party Plaintiffs,

vs.

DALE C. SCHIAN and
SARAH SCHIAN, husband and wife,

              Third-Party Defendants.

_____

SCHIAN WALKER, P.L.C., a/k/a
SWAZLAW, et al.,

              Plaintiffs,

v.

DALE C. SCHIAN and
SARAH SCHIAN, husband and wife,

              Defendants.

Case No. CV2020-001402
        CV2020-001871 (Consolidated)

**ORDER REGARDING MOTION TO
AMEND RECEIVERSHIP ORDER**

(Assigned to the Honorable
Danielle J. Viola)

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

This matter came before the Court pursuant to: (1) the Motion to Amend Receivership Order ("Motion") filed by Cody Jess ("Jess"), Scott Goldberg ("Goldberg"), and their respective spouses on April 26, 2021; (2) the Response to the Motion filed by Dale C. Schian and Sarah Schian ("Schian"); (3) the Response to the Motion filed by David M. Reaves, the Court appointed Receiver (the "Receiver") for Schian Walker, P.L.C. (the "Firm"); and (4) the Reply in support of the Motion filed by Jess and Goldberg. On June 29, 2021, the Court conducted a hearing on the Motion. Appearances at the hearing were made by counsel for the Receiver, Jess, Goldberg, Schian, and MorrisAnderson & Associates Ltd. Kim Maerowitz also appeared on behalf of The Maerowitz Law Firm. Based upon the Motion and the entire record before the Court, the Court hereby finds as follows:

**A.    General Background.**

1.    The Firm previously served as counsel for MorrisAnderson & Associates Ltd. ("MorrisAnderson") in its capacity as Litigation Trustee under that certain Creditor Trust Agreement dated October 15, 2013 (the "Trustee" and the "Trust," respectively). Morris Anderson was appointed Trustee pursuant to that certain <u>Order Confirming The Third Amended Plan of Reorganization for Swift Air, L.L.C.</u> dated August 21, 2013, which was entered by Judge Daniel P. Collins in the Swift Air, L.L.C case pending in the United States Bankruptcy Court for the District of Arizona, Case No. 2:12-bk-14362-DPC (the "Bankruptcy Court" and the "Swift Bankruptcy Case," respectively).

2.    More specifically, the Firm was retained by the Trustee to file and prosecute a lawsuit in the Swift Bankruptcy Case against Jerry Moyes and various other individuals and entities (collectively, the "Moyes Defendants"), designated as Adversary Proceeding No. 2:14-ap-00534-DPC (the "Moyes Lawsuit"). Pending since 2014, the Moyes Lawsuit resulted in significant litigation that continued up to the United States District Court for the District of Arizona and the Ninth Circuit Court of Appeals.

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

3.     The Trustee and the Moyes Defendants have settled the Moyes Lawsuit pursuant to a Settlement Agreement ("Settlement Agreement") that has been approved by the Bankruptcy Court[1].  Pursuant to the terms of the Settlement Agreement, the Trustee will receive $1.0 million in cash, in addition to $676,456.84 already received by the Trustee which latter funds are in the trust account of Gallagher and Kennedy ("G&K") (collectively, the "Initial Cash Recovery").  Assuming the Moyes Defendants fully perform their obligations under the Settlement Agreement, the Trust will receive not less than another $8.0 million up to $9.0 million over a period of time not to exceed three (3) years following the effective date of the Settlement Agreement (together, with the Initial Cash Recovery, the "Total Cash Recovery").

4.     The Trustee on behalf of the Trust incurred significant fees and costs in prosecuting the Moyes Lawsuit and otherwise performing its duties as Trustee.  The Motion addresses (among other things) the Firm's right to be paid fees owed, and reimbursed costs incurred, in representing the Trustee.

5.     Jess, Goldberg, the Receiver, and the Trustee consent to the entry of this Order.

**B.     The Firm Contracts.**

6.     The Firm was initially retained by the Trustee to file and prosecute the Moyes Lawsuit pursuant to that certain Contract For Legal Services dated December 18, 2013 (the "First Contract").  Pursuant to its Order dated December 26, 2013 ("First Retention Order"), the Bankruptcy Court approved the First Contract.  The First Retention Order does not require the Firm to obtain approval of its fees or costs from the Bankruptcy Court prior to the Trustee making payment to the Firm.

---

[1] See Order Granting Motion to Approve Settlement Agreement, Dkt 989 in 2:12-bk-14362-DPC.

Case 2:11-bk-28944-DPC    Doc 634    Filed 12/02/21    Entered 12/02/21 13:23:48    Desc
Main Document    Page 15 of 24

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

7.     On February 9, 2018, the Firm entered into a letter agreement with The Maerowitz Law Firm (the "Maerowitz Firm"), so the Maerowitz Firm could serve as co-counsel with the Firm in the Moyes Lawsuit (the "Second Contract").  Pursuant to its Order dated March 5, 2018 (the "Second Retention Order"), the Bankruptcy Court approved the Second Contract.  The Second Retention Order does not require the Maerowitz Firm to obtain approval of its fees and costs from the Bankruptcy Court prior to payment by the Trustee. The Second Contract provides that the Maerowitz Firm, subject to a 1,000 hour maximum and $400 per hour rate, is to be paid out of the contingency fee received by the Firm under its First Contract.

8.     In January 2020, the Trustee, the Firm, the Maerowitz Firm, and G&K entered into that certain <u>Consent to Association of Counsel</u> (the "Third Contract"), which G&K alleges was necessary to replace the Firm as counsel for the Trustee in the Moyes Lawsuit.   Pursuant to its Order dated January 28, 2020 (the "Third Retention Order"), the Bankruptcy Court approved the Third Contract.   Under the Third Retention Order, all compensation payable to G&K under the Third Contract is subject to approval by the Bankruptcy Court.

9.     While the First Contract, Second Contract, and the Third Contract all involve the Trustee, there is another contract relevant to this Motion to which the Trustee is not a party.  Tim Shaffer ("Shaffer") is the trustee in a different case pending before Judge Daniel P. Collins in Bankruptcy Court, the Potential Dynamix, LLC chapter 11 case, pending as Case No. 2-11-bk-28944-DPC (the "Dynamix Bankruptcy Case").

10.     In the Dynamix Bankruptcy Case, Shaffer retained the Firm on a contingency fee basis to pursue claims against Amazon Services, LLC in Adversary Proceeding No. 13-ap-00799 (the "Amazon Litigation").    In January 2020, G&K entered into a contract with the Firm (the "Fourth Contract") to address (among other things) the respective firm's rights relative to the Moyes Lawsuit and the Amazon Litigation. Pursuant

- 4 -

1   to the Fourth Contract, G&K replaced the Firm as counsel in the Amazon Litigation.  The

2   Bankruptcy Court in the Dynamix Bankruptcy Case entered an Order approving the Fourth

3   Contract (the "Fourth Retention Order"), [2] which requires all compensation payable to G&K

    to be approved by the Bankruptcy Court.

4       11.     Jess, Goldberg, the Receiver, and the Trustee agree that any

5   compensation or cost reimbursement due to either the Firm or G&K related to the Amazon

6   Litigation will not be recoverable from the Trust or any of the Total Cash Proceeds.   While

    Schian disagrees with this finding, the Court believes based upon the language of the Firm

7   Contracts, it is appropriate to find, and the Court does find, that any fees and costs that might

8   recovered by the Firm or G&K related to the Amazon Litigation is not recoverable from the

9   Trust or the Total Cash Proceeds.  The Trustee is not a party to the Fourth Contract and the

10  Bankruptcy Court in the Swift Bankruptcy Case did not approve the Fourth Contract.

11      12.     The Receiver, the Trustee, Jess, Goldberg, on one hand, and Schian, on

    the other hand, have various disagreements regarding the enforceability, validity, and/or

12  interpretation of the Firm Contracts.  Except for what is specifically addressed by the terms

13  of this Order, neither the Receiver, the Trustee, Jess, Goldberg, nor Schian, waive any of their

14  rights with respect to the Firm Contracts.  This Order merely resolves the specific matters

    addressed herein.

15
16  C.      **The Net Contingency Fee Share And Cost Issues.**

17      13.     Under the First Contract, the Firm is entitled to compensation in the form

18  of a contingency fee equal to forty percent (40%) of the gross recovery, appellate work based

    on applicable hourly rates, and costs.  However, the Firm's combined fees based on the

19
20
21  _____

[2] The First Contract, Second Contract, Third Contract, and Fourth Contract (collectively, the "Firm Contracts") and the orders approving the same are each an exhibit to the Declaration of Cody J. Jess, attached hereto as **Exhibit A**.

contingency and hourly appellate work cannot exceed fifty percent (50%) of the Trustee's total recovery in the Moyes Lawsuit.

14. Due to the timing of the appellate litigation in the Moyes Lawsuit and G&K's eventual replacement of the Firm as counsel to the Trustee, the Firm did not perform any appellate work for the Trustee. G&K performed appellate work for the Trustee and claims a right to receive payment of fees for such work in the approximate amount of $277,000.

15. Under the First Contract, the Trust's obligation to pay the forty percent (40%) contingency and the hourly fees for appellate work cannot exceed fifty percent (50%) of the amount recovered by the Trustee. Fifty percent (50%) of the Initial Cash Recovery is $838,228.42.[3] Forty percent (40%) of the Initial Cash Recovery is $670,582.36 and G&K claims $277,000 for appellate fees – the sum of which is $947,582.36.

16. After reserving $277,000 for appellate fees claimed by G&K (discussed below), the application of the fifty percent (50%) limit means the Firm's initial contingency fee share from the Initial Cash Recovery is equal to $561,228.42 ($838,228.42 minus $277,000) (the "Initial Contingency Fee Share"). The difference between the two numbers ($670,582.36 less $561,228.42 -- $109,353.94) will be paid to the Firm when the Trustee receives more payments from the Moyes Defendants under the Settlement Agreement since, eventually, the fifty percent (50%) limitation will no longer apply.

17. Under the Second Contract, the Maerowitz Firm's fees and costs in their entirety are deducted from the Initial Contingency Fee Share. The Maerowitz Firm is owed total fees and costs of $382,000. Upon receipt of the Initial Cash Recovery, the Trustee is directed to promptly pay the Maerowitz Firm this sum ($382,000) out of the Initial Contingency Fee Share and, upon payment, the Firm will be entitled to a net contingency fee

---

[3] The Initial Cash Recovery is $1,676,456.84. Half of this amount is $838,228.42.

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

share out of the Initial Cash Recovery equal to $456,228.42 ($838,228.42 less $382,000) (the "Net Contingency Fee Share").

18. Upon receipt of the Initial Cash Recovery, the Trustee will promptly pay the Net Contingency Fee Share to the Receiver, which Net Contingency Fee Share shall not be released or disbursed to any person or entity without further Order of this Court, subject only to the possible further deduction for Allowed Non-Appellate Fees (defined below).

19. The Net Contingency Fee Share may be subject to further deduction. Under the Third Contract, G&K claims the right to be paid on an hourly basis for all work performed for Trustee. As noted above, under the First Contract, the Firm agreed to handle the Moyes Lawsuit on a contingency fee basis, plus bill hourly for appellate work. However, the Firm did not do any appellate work for the Trustee. The Moyes Lawsuit appellate work was done by G&K.

20. G&K performed appellate work and other legal work for the Trustee. For purposes of this Order, G&K's fees incurred for these two types of work shall be referred to as "Appellate Fees" and "Non-Appellate Fees," respectively. G&K claims a right to be paid for Appellate Fees of approximately $277,000 and Non-Appellate Fees of approximately $366,000.

21. Under the Third Contract, G&K is entitled to be paid its hourly fees as approved by the Trustee. As noted above, the Appellate Fees, when allowed (the "Allowed Appellate Fees"), are an obligation of the Trust. The Non-Appellate Fees, when allowed (the "Allowed Non-Appellate Fees"), are an additional deduction from the Net Contingency Fee Share. The Trust is not responsible for paying the Allowed Non-Appellate Fees from any source other than the Net Contingency Fee Share.

22. Since the Bankruptcy Court required G&K to obtain approval of its compensation before payment and is familiar with the facts underlying the Moyes Lawsuit, the Bankruptcy Court is the appropriate venue for G&K to file an application for payment of

Gutilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

fees (the "G&K Fee Application"). Because G&K's fees must be allocated between Appellate Fees and Non-Appellate Fees, it is appropriate and necessary for the Bankruptcy Court to determine the allocation of such fees between the Appellate Fees and the Non-Appellate Fees.

23. G&K is directed to promptly file the G&K Fee Application in Bankruptcy Court, providing sufficient information through detailed time entries, so the Bankruptcy Court, after notice and a hearing, may decide the allowed dollar amount of the Allowed Appellate Fees and the allowed dollar amount of the Allowed Non-Appellate Fees.

24. When the Bankruptcy Court has entered an order on the G&K Fee Application determining the dollar amount of the Allowed Appellate Fees and the Allowed Non-Appellate Fees, respectively, G&K will be entitled to prompt payment of the Allowed Appellate Fees and the Allowed Non-Appellate Fees. G&K's Allowed Non-Appellate Fees will be promptly paid by the Receiver out of the Net Contingency Fee Share. G&K's Allowed Appellate Fees are an obligation of the Trust, not the Firm, and will be promptly paid by the Trustee out of the remainder of the Initial Cash Recovery.

25. In addition to legal fees, the Trust has incurred significant costs in prosecuting and resolving the Moyes Lawsuit. The Parties agree the various retention orders discussed above do not require Bankruptcy Court approval of the Trustee's decision to reimburse costs incurred in connection with this Moyes Lawsuit.

26. The Firm has $283,000 in reimbursable costs incurred in connection with the Moyes Lawsuit (the "Firm Costs"). The Receiver, Jess, and Goldberg have requested that the Trustee promptly pay the Firm Costs, upon receipt of the Initial Cash Recovery. The Trustee agrees to promptly make this payment in full and final satisfaction of any and all costs of the Firm due from the Trust.

27. G&K has approximately $28,000 in reimbursable costs incurred in connection with the Moyes Lawsuit (the "G&K Costs"). Schian and G&K have requested

that the Trustee promptly pay the G&K Costs, upon receipt of the Initial Cash Recovery. The Trustee agrees to promptly make this payment in full and final satisfaction of any and all costs of G&K.

28. Upon entry of this Order and G&K's receipt of payment for the G&K Costs, G&K is directed to promptly transfer the funds in G&K's trust account ($676,456.84) less the $277,000 estimated amount of the Appellate Fees to the Trustee. When the Bankruptcy Court has entered an order deciding the dollar amount of the Allowed Appellate Fees, then G&K is authorized to apply the funds in its trust account ($277,000) to pay the Allowed Appellate Fees in lieu of the Trustee paying such Allowed Appellate Fees under Paragraph 24 above.

29. If the Bankruptcy Court awards G&K less than the full amount sought for Appellate Fees ($277,000), then the difference between the sought amount and the allowed dollar amount shall be transferred by G&K from its trust account to: (i) the Receiver on behalf of the Firm, up to the amount of the $109,353.94 referenced in Paragraph 15 hereof, if not already paid by the Trustee; and (ii) after the payment in Paragraph 29(i) hereof, to the Trust.

30. The Receiver, the Trustee, Jess, and Goldberg retain the right to object to the allowance of G&K's fees and the allocation proposed by G&K. Neither the Receiver, the Trustee, Jess nor Goldberg waives: (i) any argument or defense that applies, or may apply, to the G&K Fee Application; or (ii) any right or claim related to the Firm Contracts.

31. The Court previously entered its <u>Amended Order Appointing Receiver</u> dated May 4, 2020 (the "Amended Order"). Any inconsistency between the Amended Order and this Order shall be resolved in favor of this Order.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED** as follows:

A. Jess, Goldberg, Schian, the Receiver, and the Trustee are hereby bound to the terms and provisions of this Order.

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

B.     Pursuant to this Order, Paragraph B of the Amended Order includes the Net Contingency Fee Share, which constitutes "Property" as defined in the Amended Order, with all liens and claims to attach to the Net Contingency Fee Share with the same validity and priority that existed prior to payment by the Trustee to the Receiver.

C.     The Receiver is granted the exclusive authority to take possession and control of the Net Contingency Fee Share, and with respect thereto, shall have all rights and remedies regarding the same as set forth in Paragraphs G(i), (ii), (v), and (xiii) of the Amended Order.   Upon receipt of the Net Contingency Fee Share, the Receiver shall have the duty to account and preserve the Net Contingency Fee Share as set forth in the Amended Order and applicable law.

D.     While the Receiver is authorized to pay, and shall pay, the Allowed Non-Appellate Fees awarded to G&K by order of the Bankruptcy Court from the Net Contingency Fee Share without further order of this Court, the Receiver shall not distribute any other portion of the Net Contingency Fee Share without further order of the Court.

E.     This Court shall retain jurisdiction to resolve any disputes arising under, or related to, this Order; provided, however, this Court will defer to the Bankruptcy Court with respect to the allowance of G&K fees and the allocation of those fees as between Appellate Fees and Non-Appellate Fees.

F.     This Order shall be effective immediately upon its entry.


Dated: _____.


_____
The Honorable Danielle J. Viola
Maricopa County Superior Court

2902-001(433406)

- 10 -

Filing ID: 13357542   Case Number: CV2020-001402
Original Filing ID: 13164287

**Granted with Modifications**

/S/ Danielle Viola Date: 9/10/2021

Judicial Officer of Superior Court

CASE NUMBER: CV2020-001402

E-FILING ID #: 13357542

SIGNATURE DATE: 9/10/2021

FILED DATE: 9/13/2021 8:00:00 AM

KEITH L HENDRICKS

KHALED TARAZI

MICHAEL R ROSS

RYAN W ANDERSON

SCHIAN WALKER P L C
DAVID REAVES ESQ REAVES LAW 2999 N 44TH ST
S
PHOENIX AZ 85018