MOYES SELLERS & HENDRICKS
Keith L. Hendricks (No. 012750)
Cody J. Jess (No. 025066)
Scott Goldberg (No. 015082)
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
khendricks@law-msh.com
*Attorneys for Cody J. Jess and Scott Goldberg*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>POTENTIAL DYNAMIX, LLC,<br><br>Debtor. | CHAPTER 11<br><br>Case No. 2:11-bk-28944-DPC<br><br>**PRELIMINARY REPLY IN SUPPORT OF APPLICATION FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS OF GALLAGHER & KENNEDY P.A. AND DALE C. SCHIAN**<br><br>DATE: January 6, 2022<br>TIME: 10:00 a.m. |

On December 20, 2021, Cody Jess ("Jess") and Scott Goldberg ("Goldberg") filed their Application for Rule 2004 Examination and Production of Documents of Gallagher & Kennedy, P.A. and Dale C. Schian (the "G&K Application") [DE 641]. The G&K Application requested an order permitting discovery under Rule 2004 of Gallagher & Kennedy, P.A. ("G&K"), and is similar to applications for discovery from G&K's client, the litigation trustee in this matter (the "Potential Dynamix Trustee") and former client, the litigation trustee in the Swift Air, LLC matter (the "Swift Trustee"). Significantly, the Potential Dynamix Trustee and the Swift Trustee have cooperated in both applications and do not object to the discovery sought. Although its client and former client do not object and are cooperating, G&K has filed an eleventh-hour objection to the G&K Application

MOYES SELLERS &<br>HENDRICKS<br>PHOENIX, AZ

00300403
5

(the "Objection") [DE 645]. This preliminary reply addresses the Objection.[1]

Jess, Goldberg, and Dale Schian ("Schian") are involved in litigation in the Maricopa County Superior Court, but that litigation, in which G&K is *not* a party, is unrelated to the Rule 2004 discovery Jess and Goldberg are seeking from G&K. G&K was employed in this case pursuant to an order (the "Employment Order") based upon an employment application and related agreements that Jess and Goldberg contend were materially misleading, that failed to adequately disclose the existence of the cross-collateral provision, and that contained terms unfairly prejudicial to Schian Walker P.L.C. ("SW") and its creditors, including Jess and Goldberg, especially given that SW was insolvent during all relevant time periods when it purportedly agreed to pay G&K's fees.[2]

The Rule 2004 discovery Jess and Goldberg are seeking relates to the propriety of G&K's disclosures related to its employment in this case and validity of the Employment Order that represent core bankruptcy matters over which this Court has exclusive jurisdiction. The Superior Court cannot decide these core issues, and there are no similar proceedings pending in the Superior Court as to which, again, G&K is *not* a party. The Rule 2004 information Jess and Goldberg are seeking will be used to support relief they will seek exclusively from this Court.

The fact of the matter is that Schian has expressly argued to the Superior Court that *this Court* has exclusive jurisdiction to decide issues related to G&K's employment in the Potential Dynamix and Swift matters:

> ***The Amazon Litigation is part of a pending proceeding under the Bankruptcy Code, Title 11, U.S.C. The Bankruptcy Court, by reference***

---

[1] Because the Objection was filed less than two days before the hearing date, Jess and Goldberg reserve the right to file a more detailed reply if the Court deems it appropriate.

[2] Actually, the cross-collateral provision obligates Swift's bankruptcy estate to pay the fees G&K incurred in this case. Pursuant to this Court's Order November 24, 2021 [DE 1028], the Swift bankruptcy estate had no further liability to G&K. Accordingly, G&K can no longer rely on the cross-collateral provision to seek payment of the fees and costs it incurred in this case.

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

Case 2:11-bk-28944-DPC    Doc 646    Filed 01/05/22    Entered 01/05/22 16:37:09    Desc
Main Document    Page 2 of 32

2

*from the District Court, has original and exclusive jurisdiction of every aspect of that matter*. 28 U.S.C. § 157. Under 11 U.S.C. § 327, the Bankruptcy Court approved the original retention of the Firm, the Contingent Fee Application, Exh. "N," and the employment of G&K. Exh. "D" to Motion to Confirm. *The Bankruptcy Court approved the prior compensation of [Schian Walker, PLC] pursuant to 11 U.S.C. § 331, and, before payment, will approve the final compensation of the Firm and G&K*. 11 U.S.C. § 330 … Any amounts received through the Amazon Litigation will be administered by the trustee or under a plan of reorganization.

The Swift Litigation is brought pursuant to the *Order Confirming Third Amended Plan of Reorganization for Swift Air, L.L.C.* (Oct. 1, 2013), Exh. "Q" ("**Confirmation Order**"). *The Confirmation Order ¶ 18 includes a broad retention of jurisdiction by the Bankruptcy Court, including ¶¶ 31-33 retention of jurisdiction and approval of the Litigation Trustee and Creditor Trust Agreement.* The Confirmation Order appointed the Litigation Trustee and authorized his retention of counsel, including the [Schian Walker, PLC], G&K, and Maerowitz. *Id.* The Bankruptcy Court approved the retention of Maerowitz, Exh. "J," and of G&K, Exh. "B." The case has been reopened to consider the Settlement, Exh. M. Before payment, the Bankruptcy Court also must approve any fees to G&K. Exh. "B." Finally, the order approving G&K as counsel, Exh. "B," includes approval of the Swift Retention.

*The Bankruptcy Court has original and exclusive jurisdiction in these matters. The Bankruptcy Code and orders of the Bankruptcy Court will control the deposit and disposition of recoveries in the Amazon Litigation and Swift Litigation.* The interest of the receivership estate to pay creditors, costs of administration, and a "substantial" distribution to equity is limited to the fees and costs payable to the Firm after payments of G&K and the other professionals who completed the representation. Those fees and costs payable to professionals, including, but not limited to G&K, are subject to the jurisdiction and orders of the Bankruptcy Court

*See* Supplemental Response to Relief Requested In Receiver's Response to Motion to Amend Receivership Order at 8:3-24, 9:6-13 (emphasis added), a copy of which is attached hereto as **Exhibit 1** (without exhibits).

In his objection to a motion to amend the receivership order to address certain issues related to the G&K fee agreements filed on August 10, 2021, Schian again told the Superior Court that the issues related to the Agreements were "**matters as to which the [Superior] Court lacks subject matter jurisdiction and jurisdiction over the parties**." Objection to Proposed Form of Order at 4:1-2, a copy of which is attached hereto as **Exhibit 2** (emphasis in original) (without exhibits). Indeed, Schian reiterated that the proposed order should not

1  be entered because it "interferes with the rights of other parties *that are not part of this*
2  *litigation*, while venturing into issues *that are uniquely within the bankruptcy court's*
3  *jurisdiction*." *Id*. at 8:12-14.

4          To summarize, Schian told the Superior Court it did not have jurisdiction or the
5  authority to decide the G&K employment issues, and now, in the Objection, is arguing that
6  this Court should abstain in favor of the Superior Court in the face of a request asking this
7  Court to reconsider G&K's employment. Apparently, G&K and Schian do not want any
8  court to decide any issues related to G&K's employment.

9          Being employed in a bankruptcy case as legal counsel is a privilege, and in exchange
10  for that privilege, the applicant is required to make candid, truthful, and complete
11  disclosures. Here, G&K voluntarily sought to be employed in this case, and will apparently
12  seek to be paid millions of dollars as a result of that employment. That it now seeks to
13  prevent discovery related to its employment is astonishing. The price to be paid for
14  employment in a bankruptcy case is the absence of secrets. G&K should not be allowed to
15  both object to full discovery of the facts and circumstances of its employment, and still
16  receive compensation from that employment.

17          In the Objection, G&K contends that disclosure of the cross collateral provision was
18  sufficient despite the fact that it is not mentioned in the employment application, but,
19  instead, was buried in an exhibit where it was described in obtuse terms. Nowhere is it made
20  clear that G&K's fees will be paid at an hourly rate regardless of the outcome of Amazon
21  litigation, while the G&K employment application suggests by its repeated references to a
22  contingency fee arrangement that the exact opposite is the case. It is not the Court's
23  obligation or the obligation of interested parties to ferret out that the contingency fee
24  agreement that G&K actually disclosed is a *disguised* guaranteed fee arrangement that pays
25  G&K win, lose, or draw.

26          There are other reasons to vacate the Employment Order that could be supported by

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

4

Case 2:11-bk-28944-DPC    Doc 646    Filed 01/05/22    Entered 01/05/22 16:37:09    Desc
Main Document    Page 4 of 32

the Rule 2004 discovery being sought here. For example, in its employment application, G&K/Schian asserts that Jess and Goldberg left SW and abandoned the contingency fee litigation in this case and in the Swift case, leaving Schian to do as he pleased with respect to those contingency fee matters. Nothing could be further from the truth. In an email Jess and Goldberg drafted and sent to Schian on July 31, 2019, Schian was advised that:

> Today is my last date of employment at Schian Walker, but I remain a member and owner of the firm until the dissolution of the firm is completed. While membership would normally require employment, such is not the case in a dissolution of the firm. All memberships rights are fully reserved. There is no actual or potential conflict because the Firm has no or will have no clients; all clients are being divided between the firm's members and will or should be serviced by the members' new law firms. Please promptly let Cody and I know what firm you will be joining or forming to service the firm's former clients that you will continue to represent. I expect that you will refrain from interfering with my access to my office and to all firm files via computer and otherwise. I will not use firm employees for any purpose.

> As I previously stated to you, I do not believe you have the authority to act unilaterally on behalf of the firm. There are no day-to-day management activities of an insolvent firm that is in the process of dissolving. All firm members must participate equally in the decision making process during the dissolution phase. Decisions will be made by a simple majority vote. To expedite the dissolution process and so that votes may be taken, please suggest a date and time next week for all of us to meet. We can meet at Schian Walker's former offices to discuss any dissolution matter that requires immediate attention. I suggest we plan on a weekly meeting until the firm is fully and finally dissolved. Firm counsel can and should participate in the meetings and I will be happy to accommodate his schedule.

> Finally, your emails to counsel and otherwise continually use the word "we" when referring to Schian Walker. To be very clear, Cody and I, owning a majority of the membership interests in the firm, constitute the "we." You are respectfully requested to keep that in mind as we work our way through the dissolution process.

*See* email from S. Goldberg to D. Schian dated July 31, 2019, attached hereto as **Exhibit 3**.

Likewise, in appointing the receiver for SW, the Superior Court determined that serious issues concerning Schian's lack of authority to act for SW were present. In fact, the filing of the G&K employment application and the entry of the G&K employment order are

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

5

Case 2:11-bk-28944-DPC    Doc 646    Filed 01/05/22    Entered 01/05/22 16:37:09    Desc
Main Document    Page 5 of 32

what caused Jess and Goldberg to institute receivership proceedings in the first place in order stop Schian from engaging in unilateral acts detrimental SW and its creditors. Goldberg and Jess contend that the G&K employment application places the events surrounding SW's demise and Schian's authority to act for SW in a false light, which standing alone is sufficient grounds for the Court to reconsider the terms of G&K's employment. Certainly, the Superior Court lacks the jurisdiction to engage in that reconsideration – just as G&K and Schian have repeatedly told the Superior Court.

G&K also alleges that Jess/Goldberg are misusing Rule 2004 to obtain an advantage in the state Superior Court litigation when, in reality, it is G&K that intends to use this Court and the Employment Order to its advantage in that litigation. G&K intends to submit a proof of claim in the state court case, which is a receivership action. The G&K claim will be based on the fees and costs G&K incurred in the Amazon litigation. G&K intends to support the allowance of its claim by telling the Superior Court that this Court has already approved its fees when it approved G&K's employment. It is G&K and Schian that are seeking to misuse the Court to their advantage in the Superior Court, not Jess and Goldberg.

The Objection correctly states that Jess/Goldberg filed an objection to the G&K employment order 18 months ago *before* G&K commenced serious work in the Amazon litigation. That objection creates a contested matter under Rule 9014, which authorizes Jess/Goldberg to obtain the same discovery that they are seeking pursuant to Rule 2004. Accordingly, Jess and Goldberg are entitled to the same discovery from G&K under Rule 2004 or Rule 9014.

G&K and Schian are mistaken, however, to conclude that Jess's and Goldberg's objection of 18 months ago reflected their knowledge and understanding of the cross-collateral provision. Jess and Goldberg did not have the cross-collateral provision in mind when their objection was filed because, apparently, they underestimated the nefarious way Schian and G&K would interpret the cross-collateral provision. It was only after this

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

6

Case 2:11-bk-28944-DPC   Doc 646   Filed 01/05/22   Entered 01/05/22 16:37:09   Desc
Main Document    Page 6 of 32

1    Court's ruling in the Amazon litigation that G&K and Schian finally made it clear that they

2    sought to use the cross-collateral provision to turn straw into gold by converting a pure

3    contingency fee case into a pure hourly case, where the recovery for G&K was 100 percent

4    assured. In fact, G&K/Schian did not inform the Swift Trustee (its own client), or the

5    Chapter 11 trustee in this case about the true nature of the cross-collateral provision either.

6        Schian is an experienced bankruptcy lawyer. He understood that approval of the

7    cross-collateral provision, a highly unusual provision, required him to make the

8    extraordinary relief he was seeking unequivocal and clear, and subject to notice and hearing.

9    He chose not to do so for reasons that will be developed and supported by the Rule 2004

10   discovery that Jess and Goldberg are seeking. Jess and Goldberg will then use that discovery

11   to seek relief from this Court, not the Superior Court.

12       The Objection contains false statements similar to those found in the G&K

13   employment application. For example, G&K and Schian assert that Jess and Goldberg

14   declined to represent the Chapter 11 Trustee in the Potential Dynamix matter, but that

15   contention is unsupported by any evidence. Generally speaking, the client chooses its own

16   counsel. Moreover, the fee payment guarantee represented by the alleged cross-collateral

17   provision was never presented to Jess or Goldberg or Moyes Sellers & Hendricks, Ltd.

18   Again, it was only after the decision in the Amazon litigation that Schian and G&K

19   definitively took the position that the cross-collateral provision provides for SW's payment

20   of 100 percent of G&K's fees and costs incurred in the Amazon litigation win, lose, or draw.

21       It is time to move past the safety of making arguments and allegations in pleadings

22   and other filings. The time has come to obtain evidence so that the Court can make sense

23   of the arguments and counter-arguments presented to it. It is time to advance the litigation

24   through evidentiary means. Jess and Goldberg are entitled to Rule 2004 discovery from

25   G&K exactly as they have requested it. That discovery directly relates to this Court's

26   Employment Order, and to the relief that Jess and Goldberg intend to seek in this Court.

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

7

Case 2:11-bk-28944-DPC    Doc 646    Filed 01/05/22    Entered 01/05/22 16:37:09    Desc
Main Document    Page 7 of 32

G&K is not a party to the state court litigation, and there are no parallel proceedings being conducted in that court. Schian told the Superior Court that it lacked jurisdiction over G&K's employment, and now is asking this Court to defer to the Superior Court – which, according to Schian, lacks jurisdiction and authority. G&K and Schian cannot have it both ways. The Application is entirely proper and should be granted.

DATED this 5th day of January, 2022.

MOYES SELLERS & HENDRICKS

By /s/ Scott Goldberg
     Keith L. Hendricks
     Cody J. Jess
     Scott Goldberg
     *Attorneys for Cody Jess and Scott Goldberg*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, receipt of which constitutes service under L.R. Bankr. P. 9076-1(a), to all parties who have appeared or otherwise filed request for notice in this matter.

I further certify that on January 5, 2022, I electronically transmitted the attached document on the following parties:

Michael R. Ross, Esq.
Dale C. Schian
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Phoenix, AZ 85015-9225
bkdocket@gknet.com
mrr@gknet.com
Dale.Schian@gknet.com

Ryan W. Anderson, Esq.
Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
randerson@gamlaw.com

David Reaves, Esq.
Reaves Law Group
2999 N. 44th Street, Suite 515
Phoenix, AZ 85018-7246
dreaves@reaves-law.com

Robert Miller, Esq.
Buchalter, A Professional Corporation
16435 N. Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
rmiller@buchalter.com

/s/ Julie Larsen

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00300403 5

# EXHIBIT 1

1   Michael R. Ross (Bar No. 016735)
    mrr@gknet.com
2   Dale C. Schian (Bar No. 010445)
    dale.schian@gknet.com
3   GALLAGHER & KENNEDY, P.A.
    2575 East Camelback Road
4   Phoenix, Arizona 85016-9225
    Telephone:    (602) 530-8000
5   Facsimile:    (602) 530-8500
    Attorneys for SWAZLAW, PLC, and Defendants
6   Dale C. Schian and Sarah Schian

7   Email for electronic service and court
    Documents: bkdocket@gknet.com
8

9               **SUPERIOR COURT OF THE STATE OF ARIZONA**

10                    **COUNTY OF MARICOPA**

11  SWAZLAW, PLC,                          No. CV2020-001402
                                                CV2020-001871 (consolidated)
12                    Plaintiff,
                                           **SUPPLEMENTAL RESPONSE TO**
13  v.                                     **RELIEF REQUESTED IN**
                                           **RECEIVER'S RESPONSE TO**
14  CODY JESS, *et al.,*                   **MOTION TO AMEND**
                                           **RECEIVERSHIP ORDER**
15                    Defendants.

16  ─────────────────────────             (Assigned to Hon. Danielle Viola)

    AND RELATED CLAIMS.
17

18          SWAZLAW, PLC, (**"Firm"**) and Defendants Dale C. Schian and Sarah Schian

19  ("**Schian**") submit this *Supplemental Response to Relief Requested in Receiver's*

20  *Response to Motion to Amend Receivership Order* dated May 17, 2021 ("**Supplement**,"

21  "**Response**," "**Receiver**," and "**Receiver's Request**").

22          Most of the facts are agreed. The Firm was unable to fulfill its contractual

23  obligations to two clients. Receiver's Request ¶¶ 8, 9. For that reason, those two clients

24  entered new agreements with G&K to conclude the work that the Firm was unable to

25  complete. *Id.* at 2:7-10, 5:14-16, 6:4-5.

26

1    The Receiver "remained 'behind the scenes,'" *Id.* at 4:19-20 and "remained on the

2    proverbial sidelines" *Id.* at 7:13-14, while G&K spent the past two years fulfilling the

3    obligations to clients that the Firm was unable to fulfill. *Motion to Confirm Employment*

4    *Agreements* (June 28, 2021) (**"Motion to Confirm"**) and *Under Seal Declaration in*

5    *Support of Motion to Confirm Employment Agreements* (June 28, 2021) (**"Declaration"**).[1]

6    Now after G&K has expended almost $2,000,000 in fees, over $225,000 in costs,

7    and paid over $87,000 that the Firm owed to its expert, Motion to Confirm at 6:25-7:1, 8:1-

8    4, the Receiver, without citation to authority, asserts there is something "fundamentally

9    unfair," Receiver's Request at 8:11-13, about the Agreements.[2] The Receiver acknowledges

10   "that Gallagher & Kennedy may have had good reason for wanting to ensure that it would

11   recover its investment into these two contingency fee cases." *Id.* at 8:18-19. But without

12   citation to authority, asserts "that he needs to be able to negotiate, and if necessary, litigate

13   claims relating to the division of Schian Walker's Share."[3] *Id.* at 11:3-4.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    The Agreements.

16   There are three agreements in issue – two separate fee agreements between G&K

17   and its new clients, and an agreement between G&K and the Firm. All were filed with

18   and approved by the Bankruptcy Court more than a year ago. Motion to Confirm at 2:7

19   – 3:2. When the Firm was unable to complete its obligations under the Agreements,

20   Receiver's Request ¶¶ 8, 9, the clients each entered into a new agreement with G&K to

---

[1] The Motion to Confirm, Declaration and attached exhibits are incorporated here by this reference.

[2] As defined in the Motion to Confirm. Unless defined all defined terms have the meanings ascribed to them in the Motion to Confirm.

[3] In footnote 5, the Receiver's Response purports to define "Schian Walker's Share" as what it would have received, *if it had fully performed its obligations under the Agreements and the clients had not been compelled to retain G&K to complete that performance.*

2

1   complete the Firm's performance of the Agreements. *Id.* at 2:7-10, 5:14-16, 6:4-5.[4]

2   G&K also agreed to expend significant time and to advance significant costs on behalf

3   of its clients. Those costs included not only the expenses necessary to advance the

4   clients' interests, but G&K also paid the Firm's outstanding obligation to an expert

5   witness whose testimony was essential to conclude the Amazon Litigation. Motion to

6   Confirm at n. 6 and Declaration. So it was necessary for there to be a third agreement

7   between G&K and the Firm. Motion to Confirm at Exh. "C," at 8-9 ("**Agreement of**

8   **Counsel**").

9           a. The Swift Litigation.

10          Since the Motion to Confirm was filed, *In re Swift Air, LLC*, Case No. 2:12-bk-

11  14362-DPC has been reopened and the *Litigation Trustee's Motion to Approve*

12  *Settlement Agreement* (June 28, 2021) was filed at Docket 977 ("**Swift Settlement**").[5]

13  If the payments required by the Swift Settlement are received, the Swift Litigation will

14  result in a total recovery of about $10 million. The attorneys' fees on the 40%

15  contingency through trial will be about $4,000,000. Even after payment of Maerowitz

16  and the portion of the G&K fees payable from the 40% contingency, the fees payable

17  to the Firm will significantly exceed the Firm's hourly charges. The G&K retention

18  agreement with its client, Motion to Confirm Exh. "A" ("**Swift Retention**") obligates

19  the client to pay G&K its hourly fees from the proceeds of the Swift Litigation, and

20  further provides for G&K to receive the proceeds of the Swift Litigation. Exh. "A" at

21

22  [4] In an oft repeated inaccuracy, the Firm *did not* receive a $12 million judgment as alleged
23  in the Receiver's Request at 6:17-18. Indeed, the Bankruptcy Court had not even entered
    its Tentative Ruling, and the first judgment would get entered until 2020. Motion to Confirm
24  at 3.

25  [5] A copy of the Swift Settlement (excluding the transactional documents which are Exhibits
    "B" – "I") is attached as Exhibit "M." To avoid confusion, Exhibits "A" – "L" refer to the
26  exhibits to the Motion to Confirm, which were submitted on June 28, 2021, and are not
    resubmitted here.

3

12 ¶ 7. G&K (and Maerowitz) have a priority of payment under their agreements with the client, but neither participates in the Firm's profit above its hourly charges.

### b. The Amazon Litigation.

The details of the Amazon Litigation are in the Declaration. The retention agreement between G&K and its client is Exh. "B" to the Motion to Confirm ("**Amazon Retention**"). Paragraph 2 of the Amazon Retention reflects that the *Application to Employ Schian Walker, PLC on a Contingent Fee Basis* (June 17, 2019), Exhibit "N" ("**Contingent Fee Application**") was submitted to the Bankruptcy Court just before Goldberg and Jess threatened to cause a dissolution. Consistent with the Amazon Retention, Schian and Goldberg were the attorneys primarily responsible for the representation and Goldberg declined to continue the representation. *Id.* at 2:7-10. In that agreement, the trustee agreed to pay G&K hourly, including a 50% bonus *after the Firm receives $1 million. Id.* 2 ¶ 5 and Exh. A to the Amazon Retention at 2 of 3.

The Receiver's Request at 6:5-6 acknowledges that the parties still do not yet know the result of the Amazon Litigation. The terms of the Contingent Fee Application are far more complicated than the 40% suggested in the Receiver's Request at 7:1-2. It includes hourly work, Exh. "N" at 1:16-18; credits for amounts previously paid hourly, *id.* at 4:16-18; and a possible 4% reduction if Resolution Strategies, LLP ("Settlement Counsel") is able to negotiate a settlement. *Id.* at 4:8-11.

In short, no one knows how much will be recovered or paid in fees and costs in the Amazon Litigation. Contrary to the Receiver's Request at n. 5 and 10:5-6, G&K's agreement to finish that litigation does not depend on the Contingent Fee Application, or the reduction for amounts previously paid to the Firm or what is owed to Settlement Counsel. As reflected in Exh. C, G&K is to be paid its hourly charges, with the possibility of a bonus in the event of (what for the Firm would be an exceptionally good result) the recovery of at least $1 million in fees and costs.

4

1        c.      <u>The Agreement of Counsel</u>.

As reflected in the Motion to Confirm, Declaration and Exh. "M" and "N" hereto, neither the Swift Litigation nor the Amazon Litigation had a defined value or anticipated recovery when G&K agreed to represent those respective clients. While the parties may have thought the Swift Litigation was close to completion in 2019, almost two years later, even with victories at every level, we know the matter is only now before the Bankruptcy Court for approval of the Settlement.

Far more work remained to conclude the Amazon Litigation. Between fees the Firm owed to its testifying expert, and G&K engaging that expert, over $100,000 was required just to accept the Amazon Litigation. Although the Receiver's Request at 8:12, describes it in terms such as "fundamentally unfair," and claims a right to "negotiate, and if necessary, litigate claims relating to the division," *id.* at 11:3-4, the Receiver's Request is devoid of either a theory or authority to avoid the agreement.

The Receiver appears to assert that he may reject the Agreements. *Mashni v. Foster,* 234 Ariz. 522, 527, 323 P.2d 1173, 1178 (Ct. App. 2014). There are many problems with the Receiver's assumption and lack of analysis.

•       The order in *Mashni* authorized the receiver to "enter into, modify and/or reject contracts." *Id.* at 524, 323 P.2d at 1175. The Amended Receivership Order does <u>not</u> provide that authority.

•       A receiver need not continue performance of *executory* contracts. *Id.* at 527, 323 P.2d at 1178. The key element of an executory contract is that performance remains due from ***both*** parties. Thus, if a client was demanding that the Firm continue with a representation, the receiver might conclude the contract was burdensome and reject it. The Agreement of Counsel requires no performance by the Firm and is not executory.

5

1      •      A receiver must act to reject an agreement within a reasonable time. *Id.*

2 The Receiver cannot remain "behind the scenes," Receiver's Request at 4:19-20 and "on

3 the proverbial sidelines" *Id.* at 7:13-14, while G&K spent the past two years fulfilling the

4 obligations to the clients that the Firm was unable to fulfill, only then to claim the

5 Agreements are "unfair" and then seek to renegotiate them after the fact.

6      •      The lack of authority in the Amended Order for the Receiver to reject

7 contracts is not accidental or an oversight. Rejection constitutes a breach and subjects the

8 receivership assets to a claim for damages. The Receiver's Request acknowledges that a

9 "substantial" distribution to equity is anticipated. As a result, even if rejection were

10 possible, which it is not, it would not increase the distribution to equity. Any saving

11 from the rejection (breach) of the Firm's obligations would give rise to a corresponding

12 claim for damages. 65 Am. Jur. 2d *Receivers* § 73 (appointment of receiver does not

13 impair contractual obligations).

14 **II.    <u>Receivership Estate's Interest.</u>**

15       The Receiver's Request starts with the unsupported assumption that all fees payable

16 in the contingent fee cases are initially the property of the Firm. "The receivables owing to

17 Schian Walker in connection with these contingency fee cases are property of this

18 receivership estate, and thus the Court has jurisdiction over any disputes relating to how

19 those funds are to be divided." Receiver's Request at 3:3-6. The Receiver does not cite any

20 authority for that proposition. As detailed in the Motion to Confirm, there were no accounts

21 receivable when the clients hired G&K. As neither case had been reduced to judgment.

22 More to the point, the fee agreements between G&K and its clients are just that – agreements

23 between G&K and its clients. The Firm and the Receiver should not and must not be

24 permitted to interfere with those relationships and those contracts. While Schian, Goldberg,

25 and Jess will need to resolve how to split up the funds ultimately paid to the Firm, Goldberg

26

6

and Jess do not have any reason, call, or legal basis, to inject that dispute into the attorney-client relationship between G&K and its clients.

Without analysis or authority, the Receiver asserts that the 40% contingency is payable to the Receiver under the Contract for Legal Services in each matter, Exhibits "O" and "P" ("**Contracts**"). The Receiver maintains that position, even though he recognizes the Firm's inability to finish the representation. Receiver's Request at 2:7-10, 5:14-16, 6:4-5.

Jess and Goldberg have alleged that Schian breached his fiduciary duties in entering the Contracts. The Receiver's Request suggests a conflict of interest. Simply put, what do either Jess and Goldberg or the Receiver suggest should have occurred? The Firm was unable to perform, faced the potential loss of all fees if it terminated the Contracts, and may have had liability for breach of the Contracts. As reflected in the Motion to Confirm at 8:4-8, no one expressed a willingness to finish the Contracts on more favorable terms to the Firm. Having "remained on the sidelines" for nearly two years while G&K successfully concluded the Swift Litigation and took the Amazon Litigation to trial, the Receiver seeks to negotiate and if necessary, litigate the fairness of the Agreements. That is not permitted.

**III.**     <u>**Jurisdiction**</u>.

This Court lacks jurisdiction over any of the parties involved in the Swift and Amazon cases, except for the Firm and its members. Both cases involve either co-counsel or Settlement Counsel. In both cases, the employment of G&K, Maerowitz, and Settlement Counsel has been approved by the Bankruptcy Court. The notion that fees flow through the receivership estate is unsupported by law, by the agreements of the various counsel, or by the orders of the Bankruptcy Court approving the selection and retention of counsel. A court is without jurisdiction to order the turnover of property by a receiver from someone in possession who is not a party to the action. *Mardula v. Mendelson,* 538 S.E.2d 338, 341

1   (Va. App. 2000) (quoting *First Nat'l. Hous. v. Superior Court*, 263 P. 343 (Cal. Ct. App.
2   1928)).

3        The Amazon Litigation is part of a pending proceeding under the Bankruptcy Code,
4   Title 11, U.S.C. The Bankruptcy Court, by reference from the District Court, has original
5   and exclusive jurisdiction of every aspect of that matter. 28 U.S.C. § 157. Under 11 U.S.C.
6   § 327, the Bankruptcy Court approved the original retention of the Firm, the Contingent
7   Fee Application, Exh. "N," and the employment of G&K. Exh. "D" to Motion to
8   Confirm. The Bankruptcy Court approved the prior compensation of the Firm pursuant
9   to 11 U.S.C. § 331, and, before payment, will approve the final compensation of the
10  Firm and G&K. 11 U.S.C. § 330. The Firm also approved the retention of and, before
11  payment, will approve compensation of Settlement Counsel. 11 U.S.C. §§ 327, 330.
12  Any amounts received through the Amazon Litigation will be administered by the
13  trustee or under a plan of reorganization.

14       The Swift Litigation is brought pursuant to the *Order Confirming Third Amended
15  Plan of Reorganization for Swift Air, L.L.C.* (Oct. 1, 2013), Exh. "Q" ("**Confirmation
16  Order**"). The Confirmation Order ¶ 18 includes a broad retention of jurisdiction by the
17  Bankruptcy Court, including ¶¶ 31-33 retention of jurisdiction and approval of the
18  Litigation Trustee and Creditor Trust Agreement. The Confirmation Order appointed
19  the Litigation Trustee and authorized his retention of counsel, including the Firm, G&K,
20  and Maerowitz. *Id.* The Bankruptcy Court approved the retention of Maerowitz, Exh.
21  "J," and of G&K, Exh. "B." The case has been reopened to consider the Settlement,
22  Exh. M. Before payment, the Bankruptcy Court also must approve any fees to G&K.
23  Exh. "B." Finally, the order approving G&K as counsel, Exh. "B," includes approval
24  of the Swift Retention.

25       Exh. A at 12 ¶ 7 attached to Exh. "A" to the Motion to Confirm, provides:

26

8

All amounts recovered by reason of the litigation shall be paid to Gallagher & Kennedy in trust for the benefit of the Litigation Trust and professionals entitled to receive payment or reimbursement. Thereafter, the payable to the Litigation Trust shall be disbursed as directed by the Litigation Trustee. From the funds payable to counsel pursuant to the Agreement, Kim Maerowitz first and then Gallagher & Kennedy second shall be paid their hourly fees and costs as approved by the Litigation Trustee. Thereafter, all remaining amounts due to counsel pursuant to the Agreement shall be paid to Schian Walker.

The Bankruptcy Court has original and exclusive jurisdiction in these matters. The Bankruptcy Code and orders of the Bankruptcy Court will control the deposit and disposition of recoveries in the Amazon Litigation and Swift Litigation. The interest of the receivership estate to pay creditors, costs of administration, and a "substantial" distribution to equity is limited to the fees and costs payable to the Firm after payments of G&K and the other professionals who completed the representation. Those fees and costs payable to professionals, including, but not limited to G&K, are subject to the jurisdiction and orders of the Bankruptcy Court.

**IV.    <u>Claim of Metro Phoenix Bank</u>.**

As reflected in both the Receiver's Request ¶ 14 and the Response n.2, there is general agreement as to the desirability of paying Metro Phoenix Bank. Although G&K could assert the priority of its lien rights, *Langerman Law Offices, P.A. v. Glen Eagles at the Princess Resort, LLC*, 220 Ariz. 252, 204 P.3d 1101 (Ct. App. 2009), the priority issue is almost entirely a matter of timing. Provided the Agreements are confirmed, G&K has been willing to wait and to permit Metro Phoenix Bank to be paid first. But the Receiver seeks to receive the benefit of the judgments and collection activity by G&K while disavowing the Agreements that led to those funds as "unfair." It is fundamental that a Receiver who wishes to receive the benefit of a contract must also accept the burdens.

**V.    <u>Conclusion</u>.**

Nothing supports granting the relief sought in the Receiver's Request. Unfortunately, conflicting demands have caused Metro Phoenix Bank, Maerowitz, and G&K to wait for

9

payment for more than a year, and have, to an unfortunate extent, placed the Firm's former and G&K's current clients in an untenable situation. Other than *wishing* G&K or some other Firm were willing to protect the clients' interests and to perform the Firm's obligations under the Contracts on more favorable terms, neither the Receiver nor Jess and Goldberg offer anything – certainly not a better alternative. Any fees payable to G&K will be subject to prior approval by the Bankruptcy Court. Finally, consistent with the Amended Receivership Order, when fees are payable to the Firm, those will be delivered to the Receiver or other party as may be directed by this Court.

RESPECTFULLY SUBMITTED July 7, 2021.

GALLAGHER & KENNEDY, P.A.

By: */s/ Dale C. Schian*
　　Michael R. Ross
　　Dale C. Schian
　　2575 East Camelback Road
　　Phoenix, Arizona 85016-9225
　　Attorneys for SWAZLAW, PLC, Dale C.
　　Schian and Sarah Schian

COPY of the foregoing served via e-mail on July 7, 2021, to:

Keith Hendricks
Joshua T. Greer
Robert Skousen
Cody J. Jess
Scott R. Goldberg
Moyes Sellers & Hendricks
1850 N. Central Ave., Suite 1100
Phoenix, AZ  85004
khendricks@law-msh.com
jgreer@law-msh.com
rskousen@law-msh.com
cjess@law-msh.com
sgoldberg@law-msh.com

10

1  Ryan W. Anderson
   Guttilla Murphy Anderson
2  5415 High Street, Suite 200
   Phoenix, AZ  85054
3  randerson@gamlaw.com

4  David M. Reaves
   Reaves Law Group
5  2999 N. 44th Street, Suite 515
   Phoenix, AZ  85018
6  dreaves@reaves-law.com

7
   Robert Miller
8  Khaled Tarazi
   Buchalter, A Professional Corporation
9  16435 N. Scottsdale Road, Suite 440
   Scottsdale, AZ 85254-1754
10 rmiller@buchalter.com
   ktarazi@buchalter.com
11

12 */s/Jo Magallanes*_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

11

EXHIBIT 2

Michael R. Ross (Bar No. 016735)
mrr@gknet.com
Dale C. Schian (Bar No. 010445)
dale.schian@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:   (602) 530-8500
Attorneys for Defendants SWAZLAW, PLC, Dale
C. Schian and Sarah Schian

Email for electronic service and court
Documents: bkdocket@gknet.com

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| SWAZLAW, PLC, | No. CV2020-001402 |
| Plaintiff, | CV2020-001871 (consolidated) |
| v. | **OBJECTION TO PROPOSED FORM OF ORDER** |
| CODY JESS, *et al.,* | |
| Defendants. | (Assigned to the Hon. Danielle Viola) |
| AND RELATED CLAIMS. | |

Dale Schian ("**Schian**"), and Sarah Schian object to the proposed *Order Regarding Motion to Amend Receivership Order* ("**Proposed Order**"). The only issue before the Court is the Receiver David M. Reaves' ("**Receiver**") request to order attorneys' fees payable to Gallagher & Kennedy, P.A. ("**G&K**") to be instead paid to him. In simple terms, there is no legal or factual basis to enter such an order. Because the Proposed Order goes beyond the relief requested and, as set forth below, beyond any legal or jurisdictional basis, the Proposed Order should be rejected and the request should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL BACKGROUND

In their April 6, 2021 *Motion to Amend Receivership Order,* at page 4, Cody Jess and Scott Goldberg ("**Jess and Goldberg**") requested that the May 4, 2020 *Amended Order Appointing Receiver* be further amended to add three sentences – "a new paragraph Q." The Receiver opposed the amendment, but instead requested that attorneys' fees payable to G&K instead be paid to him. *Receiver's Response to Motion to Amend Receivership Order* (May 17, 2021) ("**Receiver's Request**") at 12. In response, Jess and Goldberg withdrew their requested amendment. *Omnibus Reply in Support of Motion to Amend Receivership Order* (June 1, 2021) at 2:5-6.

At the June 29, 2021 hearing, the Court asked the Receiver, through his counsel, to identify the authority for the relief he requested. The Receiver's counsel could not identify any authority.

During the hearing, the Court granted Schian leave to file a *Supplemental Response to Relief Requested in Receiver's Response to Motion to Amend Receivership Order* (July 7, 2021) ("**Supplemental Response**"). That Supplemental Response reiterated the lack of authority for the relief sought. *See* pages 5:14-7:16.

The Court also permitted the Receiver a chance to reply in support of his request. The *Receiver's Reply to Schian Supplemental Response to Relief Requested in Receiver's Response to Motion to Amend Receivership Order* (July 23, 2021) ("**Receiver's Reply**") again identified no legal authority for the relief requested. Instead, the Receiver asserted, without factual or legal support, "that the Agreement of Counsel is fundamentally unfair." *Id.* at 4:2. In hindsight years later, the Receiver (or others) may wish that G&K or any other firm had agreed to take over the representation on different terms, that does not render the agreements "fundamentally unfair," nor does it give this Court to authority to disregard, or to attempt to void, the agreements.

2

1      At the June 29, 2021 hearing, the Court also directed counsel for Jess and Goldberg

2 and the Receiver to "submit a proposed Form of Order regarding the relief requested by the

3 Receiver" (that money payable to G&K be paid to him). The Proposed Order does not

4 amend the currently effective *Amended Order Appointing Receiver* to address the narrow

5 issue of which fiduciary should hold the funds. Instead, the ten-page Proposed Order, styled

6 "Order Regarding Motion to Amend Receivership Order," tries to "agree" to modify the

7 Fourth Contract in a manner not before this Court, without the consent or approval of

8 Schian, G&K, Maerowitz, Metro Phoenix Bank, or most importantly, the client (identified

9 in what it defines as the "Fourth Contract"), and without the bankruptcy court's approval

10 (even though the bankruptcy court approved the Fourth Contract). Proposed Order ¶¶ 10-

11 11.[1]

12      G&K filed its *First and Final Application for Compensation and Reimbursement of*

13 *Fees for Attorneys for the Trustee* (July 30, 2021) in *In re Swift Air, L.L.C.,* Case No. 2-12-

14 bk-14362-DPC ("**Fee Application**").[2] The Fee Application is set for hearing before the

15 bankruptcy court on September 13.

16     **II.**    **OBJECTIONS TO PROPOSED ORDER**

17        **A.**    **The Proposed Order grants relief that was not requested.**

18      Paragraph 11 of the Proposed Order acknowledges a dispute that is not the subject

19 matter of Receiver's Request or the Motion to Amend Receivership Order, and purports to

20 resolve that dispute against Schian. It also purports to impact G&K's rights in its agreements

21 with the Firm and G&K's client. That is inappropriate.

22

23

24 [1] The Court also authorized Schian to submit a proposed form of form of order. Based on

25 the record and matters pending before the bankruptcy court, Schian asserts that it is not currently necessary to modify the Amended Order Appointing Receiver.

26 [2] Because the Proposed Order does not accurately describe the fees owed, a copy of the Fee Application, without its exhibit, is attached as Exhibit "A."

**B. The Proposed Order adjudicates matters as to which the Court lacks subject matter jurisdiction and jurisdiction over the parties.**

The Fourth Contract, as defined in the Proposed Order ¶ 10, involves a contract with a bankruptcy trustee (who is not a party to this case), for G&K (also not a party to this case), to prosecute a lawsuit before the bankruptcy court (who *approved* the retention of G&K per the terms of the Fourth Contract.) Despite those facts, the Proposed Order purports to have this Court modify the Fourth Contract. On June 29, this Court requested the basis for it to grant the relief sought. The Receiver provided no substantive basis for the Court to grant that extraordinary relief. As detailed in the July 7, 2021 *Supplemental Response to Relief Requested in Receiver's Response to Motion to Amend Receivership Order*, the Court lacks jurisdiction to enter the Proposed Order as requested. *Id.* at 7-9.

On August 9, 2021, MorrisAnderson & Associates Ltd. ("**Trustee**") filed a similar request with the bankruptcy court titled *Trustee's Status Report and Motion Regarding: (I) Payment of Trust Fees and Costs; (II) Approval of Claims Register; and (III) Other Related Issues*, a copy of which is attached as Exhibit "B," without exhibits. ("**Status Report**") The Status Report attaches the Proposed Order and notes that inconsistencies exist between the relief sought in the two courts. *Id.* n. 16. It also acknowledges the jurisdictional issues which the Trustee's counsel describes as:

> Given the relief sought through this Motion and the Proposed Order lodged with Judge Viola, it is possible there will be overlapping rulings by this Court and Judge Viola. Rather than try to "steer" this Motion through those cross jurisdictional issues, the Trustee is making a similar request to both courts and leaves it to the good judgment of the Judges to make decisions as each Judge deems appropriate within their respective jurisdictional boundaries.

*Id.* n. 18. A party seeking relief needs to establish an entitlement to the relief requested and the court's jurisdiction to grant that relief. Asking the Judges to "sort it out" is inappropriate.

4

**C.** **There is no factual or legal basis to order funds payable to G&K to be turned over to a third party.**

The Third Contract, as defined in the Proposed Order at ¶ 8, provides "All amounts recovered by reason of the litigation ***shall be paid to Gallagher & Kennedy*** in trust for the benefit of the Litigation Trustee and professionals entitled to receive payment or reimbursement." *Consent to Association of Counsel* ¶ 7 (emphasis added).

Arizona recognizes a common law charging lien that is held by an attorney and attaches to the property or funds "created or obtained by the attorney's efforts" in a client's case. *Nat'l Sales & Serv. Co. v. Superior Ct.*, 667 P.2d 738, 739, 136 Ariz. 544, 545 (1983). Specifically, a charging lien attaches once a final judgment or settlement is obtained in favor of the client. *State Farm Mut. Ins. Co. v. St. Joseph's Hosp.*, 489 P.2d 837, 841, 107 Ariz. 498, 502 (1971); *see also Langerman Law Off.'s, P.A. v. Glen Eagles at the Princess Resort, LLC*, 204 P.3d 1101, 1103–04, 220 Ariz. 252, 254–55 (App. 2009) ("A charging lien is an attorney's lien that attaches after a judgment is obtained in the litigation." The lien does not attach after an attorney provides services if the services do not "produce a positive judgment or settlement for the client") (quoting *Correa v. Christensen*, 780 So.2d 220, 220 (Fla. Dist. App. 2001)); *Skarecky & Horenstein, P.A. v. 3605 N. 36th St. Co.*, 825 P.2d 949, 950, 170 Ariz. 424, 428 (App. 1991) ("Only an attorney successful in the litigation will have a fund from which to recover fees."); *Richfield Oil Corp., v. La Prade*, 105 P.2d 1115, 1118, 56 Ariz. 100, 105 (1940) (a charging lien attaches to the proceeds of a settlement, to cover payment of the attorneys' fee, if the proceeds of the settlement "pass through the hands of plaintiff's attorneys").

Here, there is no factual or legal basis to disregard G&K's contractual and common-law rights. The Proposed Order purports to preserve the parties' rights at 5 ¶ 12 and to preserve lien rights "with the same validity and priority that existed prior to payment by the Trustee to the Receiver." *Id.* at 10:3-4. As noted above, an attorneys' lien is a possessory

5

lien that attaches to proceeds that "pass through the hands of plaintiff's attorneys." *Richfield Oil Corp. v. La Prade*, 105 P.2d at 1118, 56 Ariz. at 105; *Woodbridge Structured Funding, LLC v. Arizona Lottery*, 235 Ariz. 25, 29, ¶ 19, 326 P.3d 292, 296 (App. 2014) ("A security interest is not enforceable against the debtor until the security interest has attached, and it will not attach until all three events specified in § 47–9203.B have occurred.").

Placing G&K's funds in the Receiver's hands necessarily creates a significant risk to G&K's rights. Ordering G&K to place its funds in the Receiver's hands destroys G&K's perfection of its lien in the proceeds and wipes out its priority status. *See* A.R.S. §§ 47-9303 (priorities) and 47-9314(B) ("A security interest in deposit accounts. . . is perfected by control under section 47-7106, 47-9104, 47-9105 or 47-9107 when the secured party *obtains control and remains perfected by control only while the secured party retains control*.") (Italics added.). Indeed, the Jess and Goldberg seemingly admit an attempt to destroy G&K's priority of payment: "Maerowitz has an unsecured claim for his fees up to an agreed upon cap. Depending on the enforceability of G&K's employment agreement, at best it provides G&K with an unsecured claim for a portion of the Firm's recovery." *Reply to Supplemental Response to Relief Requested in Receiver's Response to Motion to Amend Receivership Order* (July 23, 2021) at 9:8-11.

G&K is not a Firm creditor and the attorneys' fees and costs payable to G&K (from the Trustee or any other G&K client) are not funds to which the Receiver has any legitimate claim. Commingling G&K's money with the Firm's, or anyone else's, unnecessarily confuses the issue and impermissibly interferes with G&K's rights.

### D. __The Proposed Order continues a pattern of interference with G&K's relationship with its clients.__

The Proposed Order at ¶¶ 10 and 11 purports to modify what it calls the Fourth Contract. As stated above, that agreement is among the Firm, G&K, and another client who is not before the Court. The details leading up to the Fourth Contract are of record. *See Under Seal Declaration in Support of Motion to Confirm Employment Agreements* (June

28, 2021). Submitted under seal as hereto Exhibit "C" is a July 29, 2021 email from Goldberg to a G&K client, warning of the harm to the client and all parties to these proceedings that may arise from actions Goldberg is threatening to take.

The Receiver (and others) want the benefit of G&K's efforts in performing the agreements, but are unwilling to accept the terms of those agreements. See Receiver's Reply at 3 ("RECEIVER IS NOT TRYING TO 'REJECT' ANY CONTRACTS"). That statement is contradicted by the proposed language in Paragraph 11 of the Proposed Order, which purports to vitiate the Fourth Contract. Moreover, the Receiver acknowledges that it is his desire to *increase* G&K's risk associated with performing the agreements and representing G&K's clients. *Receiver's Response to Motion to Amend Receivership Order* (May 17, 2021) at 8:17-19. The continuing interference with the relationship between G&K and its clients, in both the Proposed Order and Goldberg's email, is improper and unacceptable.

**E.  <u>The Proposed Order inaccurately describes and categorizes the fees</u>.**

The Trustee incurred three categories of fees. That was true at the Firm and remains true at G&K. The Fee Application, Exhibit "A," describes those different fees in detail. Paragraph 20 of the Proposed Order, however, provides: "[f]or purposes of this Order, G&K's fees incurred for these two types of work shall be referred to as 'Appellate Fees' and 'Non-Appellate Fees,' respectively.  G&K claims a right to be paid for Appellate Fees of approximately $277,000 and Non-Appellate Fees of approximately $366,000." No matter how often Schian has informed the parties that the fees associated with administration of the Trust are a separate category of fees, the Proposed Order and the parties continually include them within a 40% contingency fee.[3] While that mischaracterization does not affect the fees payable to G&K, including costs of administration as part of the "Non-Appellate Fees" reduces the Firm's ultimate recovery.

---

[3] The Proposed Order was submitted before the Fee Application. Yet even with the detail provided in the Fee Application, the Status Report (Exh. "B") insists on using the appellate/non-appellate designation. *Id.* n. 10.

1   The Fee Application identifies $18,540 in costs of administration. The Firm is

2   entitled to $2,002 of work in this category, which was mostly to extend the term of the

3   Trust. The $18,540 owed to G&K includes advising the Trustee on Trust administration,

4   responding to Trustee inquiries on claims allowance, distribution and potential

5   subordination, and preparing the Fee Application to obtain bankruptcy court approval.

6   Whether the $20,542 is part of the 40% described as "Non-Appellate Fees" does not affect

7   G&K, but including it in the 40% will reduce the fees ultimately paid to the Firm or

8   receivership estate.

9   **III.   <u>CONCLUSION</u>**

10   The Proposed Order and the relief requested is improper. That proposed form will

11   unduly harm G&K by destroying its security interests and interfering with its client

12   relationships. The Proposed Order interferes with the rights of other parties that are not part

13   of this litigation, while venturing into issues that are uniquely within the bankruptcy court's

14   jurisdiction. For all of the foregoing reasons, the Court should sustain this objection and

15   decline to enter the Proposed Order.

16   RESPECTFULLY SUBMITTED August 10, 2021.

17   GALLAGHER & KENNEDY, P.A.

18

19   By: */s/ Dale C. Schian*

20   Michael R. Ross
     Dale C. Schian
21   2575 East Camelback Road
     Phoenix, Arizona  85016-9225
22   Attorneys for SWAZLAW, PLC, Dale C.
     Schian and Sarah Schian
23

24   **ORIGINAL** of the foregoing efiled
     With the Clerk of Superior Court on
     August 10, 2021, and COPY delivered
25   Via eFiling system to:

26   Honorable Danielle Viola

8

1

2

**COPY** of the foregoing served via
email on August 10, 2021, to:
Keith Hendricks
Joshua T. Greer
Robert Skousen
Cody J. Jess
Scott R. Goldberg
Moyes Sellers & Hendricks
1850 N. Central Ave., Suite 1100
Phoenix, AZ 85004
khendricks@law-msh.com
jgreer@law-msh.com
rskousen@law-msh.com
CJess@law-msh.com
sgoldberg@law-msh.com

3

4

5

6

7

8

9

10

11

Ryan W. Anderson
Guttilla Murphy Anderson
5415 High Street, Suite 200
Phoenix, AZ 85054
randerson@gamlaw.com

12

13

14

David M. Reaves
Reaves Law Group
2999 N. 44th Street, Suite 515
Phoenix, AZ 85018
dreaves@reaves-law.com

15

16

17

18

Robert Miller
Khaled Tarazi
Buchalter, A Professional Corporation
16435 N. Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
rmiller@buchalter.com
ktarazi@buchalter.com

19

20

_/s/ Rona L. Miller_____

21

22

8619851v9/3-0510

23

24

25

26

# EXHIBIT 3

**From:** Scott Goldberg
**Sent:** Wed, 31 Jul 2019 17:13:33
**To:** Dale Schian
**Cc:** Cody Jess; elynch@polsinelli.com; jpo@tblaw.com
**Subject:** The Pending Dissolution of Schian Walker
**Sensitivity:** Normal

Today is my last date of employment at Schian Walker, but I remain a member and owner of the firm until the dissolution of the firm is completed. While membership would normally require employment, such is not the case in a dissolution of the firm. All memberships rights are fully reserved. There is no actual or potential conflict because the Firm has no or will have no clients; all clients are being divided between the firm's members and will or should be serviced by the members' new law firms. Please promptly let Cody and I know what firm you will be joining or forming to service the firm's former clients that you will continue to represent. I expect that you will refrain from interfering with my access to my office and to all firm files via computer and otherwise. I will not use firm employees for any purpose.

As I previously stated to you, I do not believe you have the authority to act unilaterally on behalf of the firm. There are no day-to-day management activities of an insolvent firm that is in the process of dissolving. All firm members must participate equally in the decision making process during the dissolution phase. Decisions will be made by a simple majority vote. To expedite the dissolution process and so that votes may be taken, please suggest a date and time next week for all of us to meet. We can meet at Schian Walker's former offices to discuss any dissolution matter that requires immediate attention. I suggest we plan on a weekly meeting until the firm is fully and finally dissolved. Firm counsel can and should participate in the meetings and I will be happy to accommodate his schedule. I look forward to meeting Mr. O'Sullivan.

Finally, your emails to counsel and otherwise continually use the word "we" when referring to Schian Walker. To be very clear, Cody and I, owning a majority of the membership interests in the firm, constitute the "we." You are respectfully requested to keep that in mind as we work our way through the dissolution process.

Thank you.

**Scott Goldberg**

**Attorney**

Schian Walker, P.L.C.

1850 North Central Avenue, Ste. 2010

Phoenix, AZ 85004-4531

Ph: (602) 277-1501

Fax: (602) 297-9633

E-mail: sgoldberg@swazlaw.com