MOYES SELLERS & HENDRICKS
Keith L. Hendricks (No. 012750)
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
khendricks@law-msh.com
*Attorneys for Cody J. Jess and Scott Goldberg*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| In re: | CHAPTER 11 |
|---|---|
| POTENTIAL DYNAMIX, LLC, | Case No. 2:11-bk-28944-DPC |
| Debtor. | **OBJECTION TO AMENDED APPLICATION OF GALLAGHER & KENNEDY FOR PAYMENT OF FEES AND REIMBURSEMENT OF COSTS** |
| | **(Evidentiary Hearing Requested)** |

Five minutes before the hearing to consider G&K's[1] First Interim Fee Application ("Original Application") [DE 673], G&K filed an amended application ("Amended Application") [DE 713]. The Amended Application has text that is just one page in length and purports that it was filed to "clarify" the Original Application and attached a "settlement agreement" with the Receiver. Instead of clarifying things, the Amended Application exacerbates the confusion over the amount and legal and factual bases for the fees being sought. As the Court directed, Jess and Goldberg reached out to G&K for clarification before filing this objection, but none was provided. As such, Jess and Goldberg cannot determine if G&K is asking this Court to approve $1.1 million in fees and costs, a contingency of 40% of a future recovery, or some other amount.

To the extent G&K is now asking the Court to approve $1.1 million in fees and costs,

---

[1] Capitalized terms used herein shall have the same meanings ascribed to them in Jess and Goldberg's Preliminary Objection to Interim Fee Application of Gallagher & Kennedy [DE 692].

00321294 5

MOYES SELLERS & HENDRICKS
PHOENIX, AZ

Case 2:11-bk-28944-DPC    Doc 718    Filed 11/14/22    Entered 11/14/22 17:12:51    Desc
Main Document    Page 1 of 13

or some lesser amount to be paid from the Receivership Action, Jess and Goldberg's original objections are relevant and incorporated herein. In addition to the lack of clarity and the incorporation of all prior arguments, the Court should not consider the Amended Application for three threshold reasons. First, whether G&K was properly employed has not been determined and is subject to bona fide dispute and a pending request for evidentiary hearing. Second, G&K is only entitled to an award of fees upon a recovery, and no recovery has occurred. G&K allegedly has the rights that SW had, and SW was only entitled to an award of fees upon a recovery. Third, because there is no recovery yet, any adjudication of the contested issues surrounding the Amended Application, both under state law and bankruptcy law, will result in an advisory opinion and an unnecessary use of judicial resources.

I. **THE AMENDED APPLICATION IS UNCLEAR**

As noted above, the Amended Application is unclear as to the relief it is seeking. The operative language in the Amended Application is on page 2 and is as follows:

> [T]o clarify the Application, G&K is only seeking payment of the firm's attorneys' fees *[not defined]* and reimbursement of its costs (in the amount of $297,392.54) from the Estate, out of any recovery, pursuant to **[1]** the Contract for Legal Services dated June 17, 2019, **and [2]** orders approving the employment of counsel in these proceedings. (brackets and emphasis added)

The "Contract for Legal Services dated June 17, 2019" is the contingency fee agreement between the Trustee and SW for 40% of any recovery. At the present time, if the existing Judgment were paid in full, 40% of the Judgment would be about $520,000. So a recovery premised on the "Contract for Legal Services" would be about $520,000. On the other hand, the "orders approving employment of counsel" do not rely on the contingency fee agreement and instead incorporate the "Agreement of Counsel" that purports to provide for payment of G&K's fees on an hourly basis. The Original Application indicated that G&K's fees on an hourly basis were over $1.6 million. So

MOYES SELLERS & HENDRICKS
PHOENIX, AZ

00321294 5

instead of clarifying that G&K is seeking recovery on a contingency basis, or is still seeking recovery on an hourly basis, the Amended Application simply conflates the two theories and apparently relies on both.

Moreover, the alleged settlement agreement attached to the Amended Application refers to "G&K Claims" as $1.1 million to be paid $650,000 from "Receivership Assets," which is the proceeds from the Swift Litigation, and $450,000 from "any funds received by G&K from the Amazon Litigation." Settlement agreement ¶¶ 2, 3, 5. If G&K receives more than $450,000 from the Amazon Litigation, that amount will be "timely remitted to reimburse the Receiver." *Id.* ¶ 5. There is no basis or authority referenced in the Amended Application or the settlement agreement for this compromise deal.

Simply stated, there is no statement in the Amended Application or in the Settlement Agreement stating that G&K is seeking fees based on an hourly rate, on a contingency rate, or the amount of fees that G&K is asking this Court to approve. Instead, the Amended Application simply conflates all theories and asks for some type of an award or advisory opinion.

At the Court's suggestion during the last hearing, Jess and Goldberg expressly asked G&K to clarify. After placing the issue in context, G&K was asked as follows:

> I would request two things: First, that you clarify (1) whether the Amended Interim Application seeks solely the approval of the 40% contingency fee and the costs incurred, and there is no request for approval of any fees based on an hourly basis, or (2) whether the Amended Interim Application is seeking approval of both contingency and hourly fees. Second, I would request that you consider whether the Amended Interim Application requires an amendment to the Order authorizing Employment so as to make clear that G&K was merely stepping into SW's shoes for the 40% contingency or whether the Employment Order will continue to provide for payment of fees incurred on an hourly basis. If G&K is still going to ask the bankruptcy court to approve some or all of its fees in the Amazon litigation on an hourly basis as opposed to a contingency basis, I think that needs to be clearly spelled out.
>
> I think this issue highlights a problem with the settlement as

> currently structured. Even if it all works as intended, it results in a total of $1.1 million going to G&K, which is at least $290k more than G&K would currently get under the June 2019 SW contingency agreement. So the question is whether you are asking the bankruptcy court to approve this extra $290k as reasonable knowing that it doesn't come from the debtor's estate (and ignoring the question of whether the bankruptcy court even has jurisdiction to approve fees not paid by the debtor's estate), or whether you are going to ask the State Court to award you fees for work done in a bankruptcy cases that have not been approved by the bankruptcy court, and may never be approved as reasonable by the bankruptcy court.[2]

G&K never responded to this email. G&K did not clarify whether the Amended Application seeks solely the 40% contingency fee recovery, or whether it was still seeking approval of fees on an hourly basis. G&K also did not clarify whether the Amended Application would require a modification of the Order approving the Employment Application that was premised on the Agreement of Counsel.

Specifically, it is unclear whether the Amended Application seeks a fee award of: (a) $290,000 (the difference between $1.1 million and G&K's costs plus a contingency fee of $520,000); (b) $450,000 (the amount G&K is seeking from the Amazon Litigation under the settlement; (c) a contingency fee of 40% of any ultimate recovery (likely about $520,000 if the current judgment were enforced and paid); (d) $820,000 (a contingency fee of 40%, likely about $520,000, and $300,000 in costs); or (e) or $1.1 million. If the Amended Application asks the Court to award fees and costs of $1.1 million with $650,000 to be paid using the Swift Proceeds, then the Amended Application fails to cite to any legal authority that gives the Court the jurisdiction or the statutory authority to award fees not payable by the bankruptcy estate. Nor is there a basis to determine how G&K concluded or calculated that the estate's fee and cost obligation to G&K is $1.1 million, $820,000, $450,000, $290,000, or some other number.

## II. AUTHORITY FOR AWARD OF FEES

---

[2] A copy of the email sent on October 31, 2022 (with a reference to settlement discussions redacted) is attached as **Exhibit A**.

MOYES SELLERS &
HENDRICKS
PHOENIX, AZ

00321294 5

Case 2:11-bk-28944-DPC    Doc 718    Filed 11/14/22    Entered 11/14/22 17:12:51    Desc
Main Document    Page 4 of 13

The Amended Application does not refer to any specific provision of any employment agreement or court order that supports a fee payment in the amount of $1.1 million, $820,000, $450,000, or $290,000. In fact, the Amended Application does not establish that there is an employment agreement that the Trustee has approved. The Court, however, is aware that Mr. Dooley did not consent to the Agreement of Counsel:

> I'm not going to intertwine these cases, I'm not going to agree to do stuff that helps [G&K] and hurts the estate. I'm - that's stupid. Beyond business stupid it's probably a fiduciary breach finding.[3]
>
> I told [Dale Schian] there was no way I was doing that. Only to find out later that he'd done it unilaterally behind my back.[4]
>
> And to make matters worse, I specifically disavowed this provision …. I said I'm not doing that. So [it] looks to me like this is an end run around my direction … to my attorney.[5]
>
> Dale violated [my] direction and intertwined the two cases against [my] specific instructions … while he was my counsel.[6]

### III. THE AGREEMENT OF COUNSEL

Significantly, it is not clear whether G&K continues to rely on the Agreement of Counsel as a basis for its amended fee request. This is a very important issue. As the Court is aware, G&K has apparently used the Agreement of Counsel to leverage a settlement with the Receiver that would take real and substantial money away from creditors of SW, including Jess and Goldberg. Without any court yet considering the issue, the settlement relegates and subordinates all creditors, including Jess and Goldberg, behind the payment to G&K. As such, the settlement provides that if the State Court does not ratify the settlement, it is null and void. Settlement agreement ¶ 4. Therefore, this entire exercise may prove futile. Accordingly, G&K needs to clarify if the Amended Application continues to rely on the Agreement of Counsel. To the extent that G&K continues to rely on the

---

[3] Dooley Depo. [DE 685] at 54:21-15.
[4] *Id.* at [DE 685] at 141:17-19.
[5] *Id.* [DE 685] at 116:14-19.
[6] *Id.* [DE 685] at 169:15-20.

Agreement of Counsel, Jess and Goldberg have already, and once again request an evidentiary hearing concerning the misrepresentations and non-disclosures by G&K.

## IV. INCORPORATION OF ARGUMENTS FROM JESS AND GOLDBERG'S ORIGINAL OBJECTION

In this Objection to the Amended Application, Jess and Goldberg incorporate their (a) Limited Objection to G&K's employment [DE 693] and (b) preliminary objection to the Original Application [DE 692] (collectively, the "Prior Objections"). The Prior Objections apply to the Amended Application without distinction.

The Amended Application should be denied because G&K does not have a binding employment contract for the reasons detailed in the Prior Objections, which are summarized below for the Court's convenience.

1. **Schian Lacked Authority to Bind SW to the Agreement of Counsel.**

Jess and Goldberg were majority owners of the SW. Schian's managerial rights were limited to day-to-day matters. Schian agreed to the dissolution of SW. The Receiver found that Schian required Jess and Goldberg's consent to bind SW to the Agreement of Counsel. If Schian lacked authority, which he did, then the Court approved a non-binding employment agreement. If the agreement is not binding, then G&K will be required to seek compensation under an alternative theory.

2. **The Cross Collateral Provision Resulted in a Fraudulent Transfer Made With the Intent to Delay and Defraud Creditors.**

The Cross Collateral Provision resulted in a transfer of SW's interests in the Swift Proceeds to G&K and Schian. The transfer was made by an insider (Schian) who retained control after the transfer was made. The transfer was made for no value, while SW was going out of business and to avoid paying debts it owed to third parties, such as Jess and Goldberg. The transfer was not disclosed to Jess, Goldberg, Dooley, or Shaffer or to the Receiver, and the transfer was a transfer of SW's only valuable asset. Substantially all of the badges of an intentionally fraudulent transfer are present. *See* A.R.S. § 44-1004(B).

3. **The Cross Collateral Provision Resulted in a Constructively Fraudulent Transfer.**

The Cross Collateral Provision resulted in a transfer of the SW's interests in the Swift Proceeds for less than reasonably equivalent value when SW could not pay its debts in the ordinary course of business. The foregoing is not subject to a bona fide dispute. *See* A.R.S. § 44-1004(B).

4. **The Cross Collateral Provision Evidences a Breach of Fiduciary Duty by Schian When He Was a Shareholder and Partner at G&K.**

Schian owed fiduciary duties to members of SW as its managing Member. Schian owed fiduciary duties to creditors of SW because SW was insolvent when the transfer was made and Jess and Goldberg were creditors. *See Cal X-Tra v. W.V.S.V. Holdings, LLC*, 229 Ariz. 377 (2012).

5. **G&K's Billing of Fees Violated the Receivership Orders.**

The Order appointing the Receiver prohibited third parties from incurring debts that the Receivership would become obligated to pay. G&K incurred a large debt while the Receivership was pending without the Receiver's knowledge and consent or the State Court. Substantially all the fees G&K incurred were incurred **after** the Receiver was appointed.

6. **The Lack of Client Consent to the Cross Collateral Provision Invalidates It.**

Dooley and Shaffer had the right to approve the Cross Collateral Provision and the payment of G&K's fees from secondary sources. G&K obtained employment and seeks compensation on employment terms that its clients did not agree to.

7. **Under the Agreement of Counsel G&K Only Had the Fee Payment Rights That Schian Walker Had.**

SW waived its fees rights in its contingency fee agreement dated June 2019. The waiver was effective if SW could not complete its representation, which event occurred in July 2019. Accordingly, G&K has no contractual right to seek fees because SW lacked

those same rights.

The agreement between the Receiver and G&K does not resolve the above state law issues because they have been asserted not by SW or by the Receiver but by Jess and Goldberg as creditors and members of SW. Regardless, the issues described above were not disclosed to the Court in connection with the Employment Application as was required. But even if the Court chooses to consider the Amended Application, it should be denied under applicable bankruptcy law because of the reasons detailed in the Prior Objections. These are summarized below for the Court's convenience:

1. **Lack of Bankruptcy Jurisdiction.**

The Bankruptcy Court does not have jurisdiction to award fees not payable from the bankruptcy estate. If the Amended Application seeks an award of $1.1 million or any award payable out of the Swift Proceeds, then such a request is not within the Court's jurisdiction to approve.

2. **Lack of Statutory Authority.**

Bankruptcy Code § 330 provides that the Court may "award" fees but only from property of the estate, and the Swift Proceeds are not property of the estate.

3. **Lack of Disclosure and Misleading Representations.**

G&K did not disclose the conflict-of-interest Schian had. G&K misrepresented that Jess and Goldberg had left SW and that Goldberg refused to work on the Amazon Litigation. No disclosure was made that SW was insolvent and that claims had been asserted that Schian lacked authority to bind SW to the Agreement of Counsel.

4. **Lack of Notice and Due Process.**

The Cross Collateral Provision is not disclosed in the Employment Application and not clearly described in the Agreement of Counsel. Notice was not given to Jess and Goldberg. The extraordinary relief of the Cross Collateral Provision required notice and a hearing.

5. **The Requested Fees are Unreasonable.**

SW had performed most of the pre-trial work. The trial was limited to opposing experts. Consideration of documents was limited to May 15th data. There was a single breach of contract claim to be decided.

6. **The Requested Fees Did Not Benefit the Estate.**

In the Amended Application, G&K *appears* to be seeking a fee award of $1.1 million, while the bankruptcy estate may receive about $100,000, so that the fees G&K is seeking are about ten times greater than the amount of cash the estate will receive, while no distribution will be made to unsecured creditors and administrative creditors will receive token payments.

Jess and Goldberg anticipate that G&K will contend that they lack standing to object to the Amended Application. Jess and Goldberg have standing because the Amended Application is tied to the agreement between G&K and the Receiver which effects the rights of Jess and Goldberg in the State Court. In other words, approval of the Amended Application will result in the distribution of the Swift Proceeds to G&K that Jess and Goldberg contend should be paid to them. Their financial stake in the matter is obvious.

## V. CONCLUSION

The Court should deny the Amended Application. It is unclear as to the relief it is seeking. Open issues remain as to the legality of G&K's employment, the Court's approval of the Agreement of Counsel, and any ruling on the Amended Application would be advisory and/or a waste of judicial resources given that there is not yet any approval from the State Court (a predicate requirement) and that no recovery from Amazon has been obtained. Indeed, there are many unresolved issues concerning the enforceability of the Agreement of Counsel and any fee application. Finally, G&K has not shown that the Court has the jurisdiction and/or the statutory authority to approve the Amended Application, and

has not shown that the fees requested are reasonable and benefitted the estate.

DATED this 14th day of November, 2022.

MOYES SELLERS & HENDRICKS

By */s/ Keith L. Hendricks, #012750*
Keith L. Hendricks
*Attorneys for Cody J. Jess and Scott Goldberg*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, receipt of which constitutes service under L.R. Bankr. P. 9076-1(a), to all parties who have appeared or otherwise filed request for notice in this matter.

I further certify that on November 14, 2022, I electronically transmitted the attached document to the following parties who have not appeared in this matter:

Mark Deatherage, Esq.
Mark Deatherage Law Office
516 W. Royal Palm Rd.
Phoenix, AZ 85021
mark@deatheragelawaz.com

Robert Miller, Esq.
Khalid Tarazi, Esq.
Buchalter
16435 N. Scottsdale Rd., #440
Scottsdale, AZ 85254-1754
rmiller@buchalter.com
ktarazi@buchalter.com

*/s/ Julie Larsen*

# EXHIBIT A

# Keith Hendricks

| | |
|---|---|
| **From:** | Keith Hendricks |
| **Sent:** | Monday, October 31, 2022 2:07 PM |
| **To:** | Ross, Michael R.; Schian, Dale C. |
| **Cc:** | mark@deatheragelawaz.com; Cody Jess; Scott Goldberg; Ryan Anderson |
| **Subject:** | G&K Amended Interim Application |

Gentlemen,

there is one issue that I previewed before Judge Collins where he invited me to reach out to confirm what is intended. I am doing just that. The issue is the underlying agreements that authorize the fee application and what exactly that you are requesting. It is our position that your Amended Interim Application continues to conflate (or at least potentially conflate) two irreconcilable underlying agreements. That is the 40% SW contingency agreement, and the Agreement of Counsel that provides for the payment of fees on an hourly basis to be paid from the Swift proceeds. On page 2 of the Amended Interim Application, G&K states:

"Second, to clarify the Application, G&K is only seeking payment of the firm's attorneys' fees and reimbursement of its costs (in the amount of $297,392.54) from the Estate, out of any recovery, pursuant to [1] the Contract for Legal Services dated June 17, 2019 [the 40% SW contingency agreement], **and** [2] orders approving the employment of counsel in these proceedings." (emphasis and brackets added).

So, as I read this, it says that G&K is seeking payment of fees and costs from the Amazon debtor's estate out of the 40% contingency contract (which is approximately $520k in fees as the judgment is currently constituted and $300k in costs), **and** recovery from the Estate under the Employment Orders. But G&K previously argued that the Employment Order approves the Agreement of Counsel, which provides for payment from SW on an hourly basis. So I don't know if the Amended Interim Application is asking the Court to approve as reasonable both a 40% contingency **and** a certain amount of hourly work on top of that. I understand that the settlement agreement compromises, modifies and reduces claims under the Agreement of Counsel, but because it ultimately provides for G&K to get $1.1 million if everything works as intended, which is more than just the contingency and costs, it is still premised on the Agreement of Counsel. Moreover, the Agreement of Counsel was the basis for the Employment Order and the Settlement Agreement cannot unilaterally modify the Employment Order.

I would request two things: First, that you clarify (1) whether the Amended Interim Application seeks solely the approval of the 40% contingency fee and the costs incurred, and there is no request for approval of any fees based on an hourly basis, or (2) whether the Amended Interim Application is seeking approval of both contingency and hourly fees. Second, I would request that you consider whether the Amended Interim Application requires an amendment to the Order authorizing Employment so as to make clear that G&K was merely stepping into SW's shoes for the 40% contingency or whether the Employment Order will continue to provide for payment of fees incurred on an hourly basis. If G&K is still going to ask the bankruptcy court to approve some or all of its fees in the Amazon litigation on an hourly basis as opposed to a contingency basis, I think that needs to be clearly spelled out.

I think this issue highlights a problem with the settlement as currently structured. Even if it all works as intended, it results in a total of $1.1 million going to G&K, which is at least $290k more than G&K would currently get under the June 2019 SW contingency agreement. So the question is whether you are asking the bankruptcy court to approve this extra $290k as reasonable knowing that it doesn't come from the debtor's estate (and ignoring the question of whether the bankruptcy court even has jurisdiction to approve fees not paid by the debtor's estate), or whether you are going to ask the State Court to award you fees for work done in a bankruptcy cases that have not been approved by the bankruptcy court, and may never be approved as reasonable by the bankruptcy court.

Keith



**Keith L. Hendricks**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**(602) 604-2120 (office)**
**(602) 576-6085 (mobile)**
www.law-msh.com



NOTE: The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information. Further, if you are not the intended recipient of this e-mail, please delete it immediately. This e-mail and its attachments are believed to be free of any virus or other defect; however, it is the responsibility of the recipient to ensure that the e-mail is virus free and no responsibility is accepted by Moyes Sellers & Hendricks for any loss or damage arising in any way from the use of the e-mail or attachments thereto.